## GIBSON, ET AL. v. GOLDTHWAITE.

| 7 | 281 |
|---|---|
| 101 | 93 |
| 102 | 423 |
| 7 | 281 |
| 112 | 610 |
| 7 | 281 |
| 128 | 196 |

1. A bill of interpleader will lie though the complainant be not actually sued, or be sued by one only of the conflicting claimants, or though the claim of one defendant be actionable at law, and the other in equity.

2. The complainant in a bill of interpleader, should make an affidavit that his bill is not filed in collusion with either of the defendants named therein, but merely of his own accord to obtain the relief sought; the want of such an affidavit may be good ground of demurrer, but if the defendants do not demur, they cannot object at the hearing, or on error, that the bill was irregularly exhibited.

3. Where one person *as the agent of another*, receives money which is claimed by a third person who gives notice of his claim, a bill of interpleader will not lie; for a mere agent cannot by notice be converted into a trustee: But it seems that a bill of interpleader, as between principal and agent was admissible, where the claim was under a derivative and not under an adverse title.

4. A bill of interpleader puts the defendants to contest their respective claims, and if the question between them is ripe for decision, the Court decides it; but if the cause is not in that condition, the Court directs an action, or an issue, or a reference to the master.

36

5. An attorney at law who has collected money, may file a bill of interpleader in respect to the same, against defendants who set up a derivative claim from the person for whom the attorney undertook the collection ; and this, although he may be entitled to retain a part of it to compensate his services.

6. The defendants to a bill of interpleader will not be permitted to object on error, that a third person was not made a defendant also, where the want of such a party could not in any manner affect their rights.

7. In the absence of authority conferred by the charter, by-laws, &c., the president of the directory of a banking corporation, cannot use its cash or credits, &c., for the purpose of settling the demands of its creditors, &c.: And the seal of the corporation cannot impart validity to an unauthorized transfer by its president.

8. An assignment made under the resolution of the directory of a banking corpo- ration, for a purpose within the scope of their powers is *prima facie* valid.

9. The deposition of a witness should not be excluded, merely because he has omitted to answer one of the questions propounded, which was *prima facie* im- pertinent, and the direct answer to which could not benefit the party by whom it was proposed.

Writ of error to the Court of Chancery sitting in Montgom- ery.

THE defendant in error filed his bill in June, 1841, setting forth that as an attorney and counsellor at law, residing in this State, he received of the "Tombigbee Rail Road Company," (a foreign corporation,) in the year 1838, a note and sundry other claims for collection, amounting to a very large sum of money—a part of which have been collected. That Felix F. Gibson exhibited to complainant a paper purporting to be an assignment of eleven thousand dollars of the nett proceeds of the claims in his hands, under the corporate seal of the com- pany, and bearing date the 13th January, 1840. *Further*, that in June, 1840, the complainant received a letter from Charles Walsh, informing him that the corporation on the 24th February, 1840, made an assignment of its assets and effects of every kind to him, (Walsh,) for the benefit of its creditors : and in July or August, 1840, he was notified by Bryan Marsh, that Gibson had drawn an order in his favor, for about six thousand dollars of the sum collected on the claims in the complainant's hands. The complainant further stated, that Walsh informed him the assignment under which Gibson claims was fraudulent, and made by the president of the com- pany without the authority or approbation of its directors: that he held the money collected by him ready to pay over to

the person entitled to it; that both Gibson and Walsh had instituted suits against him for its recovery; he therefore prayed that they and Marsh might interplead, &c., and in the meantime an injunction might issue to restrain trials at law, &c.

The defendant Walsh, in his answer states, that on the 24th of February, 1840, the president of the corporation, under the authority of a resolution adopted at a regular meeting of the board of directors, on the 13th of same month, did, by deed duly executed, assign to him all the assets, bills receivable, and property of every nature and kind of which the company was the owner, for the benefit of its creditors, &c. *Further*, at the time of this assignment, the company was the proprietor of the claims placed in the complainant's hands, or of the money thereon collected: that this defendant was the cashier of the company at that time, and when the assignment to Gibson bears date, and affirms, that the latter was made without the knowledge either of the directors or himself, that it was fraudulent and no consideration ever given therefor to the company. That Gibson was indebted to the company in the sum of thirty thousand dollars, which is still unpaid, and that its bills which were paid to the president, the defendant believes were retained by the latter and used for his own purposes, &c.

It is also stated, that the assignment to Gibson was a palpable violation of the by-laws which defines the president's powers, and so known to Gibson as he was a director at the time; that the circulation of the company was worth about forty cents in the dollar, yet the assignment contemplated that he should receive good funds for them at their nominal amount. *Lastly*, the defendant charges that the transfer was not made by the president to Gibson, until after the general assignment for the creditors, although it is dated previously.

The defendant Gibson answers, "that some time about the month of February, A. D. 1840," he was the *bona fide* holder of "about four thousand dollars" of the bills of the corporation, and as the agent of Bryan Marsh, held "about seven thousand dollars more of its circulation." That he made frequent application to the board of directors and officers of the company for their payment, which was from time to time refused; whereupon this defendant being desirous of securing the pay-

ment of the bills held by himself and Marsh, with the assent of the latter paid them over to the president of the corporation, to the amount of eleven thousand dollars, and received from him an assignment of certain claims then in the hands of the complainant, of which the company was the proprietor, "amounting to the sum of eleven thousand dollars," with interest on the same, at the rate of seven per cent. per annum. Shortly after the execution of the assignment, this defendant transmitted the same to the complainant who acknowledged its reception in writing. He denies that the assignment was made by the fraudulent combination of the president of the company and himself, and insists that the same was in accordance with a resolution of the board of directors, which authorized the cashier to deliver to him any bills receivable belonging to the corporation, in exchange for the bills which this defendant held. *Further*, he admits that he has commenced an action at law in his own name against the defendant for the money collected and withheld by him.

The defendant Marsh confirms the statements in the answer of Gibson so far as they relate to his interest, and declares his belief in the fairness and legality of the assignment to Gibson ; inasmuch as he has been informed and believes that it was made in conformity to a general order of the board of directors of the company, authorizing its officers to give in exchange any of its assets for its circulation, at par; or if there was no such general or special order of the board, or by-laws, then it was made by the president in virtue of his general control of the affairs of the company. *Further*, that this defendant was not informed until November, 1840, that Walsh claimed the funds transferred by the assignment to Gibson ; and he claims the portion assigned to him, not only under the transfer, but upon principles of equity applicable to his case.

The cause was heard on the bill, answers, exhibits, depositions and agreement of counsel. The Chancellor decided the following points : 1. He overruled the exceptions to the testimony, the first of which was, that the witnesses, Butterworth, Hatch and Gibson did not answer the seventh cross interrogatory ; he being of opinion that this question was substantially answered by the answers to the direct interrogatories, as well

as the other cross interrogatories. The second exception was, that Butterworth's deposition was in his own hand writing, although he was the attorney for the defendant Walsh, and he had written in part the deposition of the witness Butler. 2. He was of opinion that the answer of Walsh, so far as it relates to the assignment to him, was fully sustained by the proofs. 3. That the president of the corporation had no authority, unless authorized by the charter, a by-law, or special grant of power to make the assignment to Gibson; that the evidence did not show an authority derived from either of these sources, or a confirmation of the act done. 4. That the assignment to Gibson being ante-dated, and made at a time when he was largely indebted to the company; which indebtedness is still unprovided for, warrants the inference that it was not *bona fide.* 5. That as no right to the funds in the complainant's hands, (even as against the company,) was transferred to Gibson, he could pass none to Marsh; and that the latter was affected by a notice to the former of the circumstances under which the assignment was made. It was therefore adjudged that the assignment to Gibson be set aside, and that the complainant pay over to Walsh the money collected by him on the claims, &c. &c.

E. W. Peck and L. Clark, for the plaintiff in error. The bill should have been dismissed, because it wants the affidavit of the complainant, that there is no collusion between him and any of the persons who claim the money in his hands. [Coop. on Eq. Pl. 49, 50; Mitf. Eq. Pl. 48–9; Story's Eq. Pl. 237; 2 Story's Eq. 116, § 809; 8 Paige's Rep. 345; 1 Cow. Rep. 704; 1 Smith's Prac. 473; Jeremy's Eq. Jur. 347.] So the bill is defective, because it does not show that the defendants claim the same debt, duty or other thing from the complainant. But on the contrary, Walsh claimed all the demands or money in the complainant's hands belonging to the corporation; Gibson, a part of them, and Marsh, a portion of the sum to Gibson. [Story's Eq. Pl. 237, § 291–3–4; 2 Story's Eq. 113, § 806; Coop. Eq. Pl. 45; 1 Cow. Rep. 703.]

The bill is objectionable in other respects. It does not alledge that the complainant was a mere stakeholder without interest, and the reverse is inferable, as he would be entitled

to a reasouable compensation for his professional services. [2 Sim. & Stuart's Rep. 347.] Neither of the assignees of the corporation could have sued at law in their own names, and the complainant being merely its private agent, cannot sustain a bill of interpleader. [1 Toml. Rep. 177; 1 Metc. & P. Dig. 245, § 41; 247, § 86–9; Story's Eq. 114, § 807; 2 Paige's Rep. 199; 1 Pick. Rep. 504; 15·Mass. Rep. 485; 4 Rand. Rep. —; 7 Conn. Rep. 399; 2 Greenl. Rep. 510; 5 Stew. & P. Rep. 60: 14 Mass. Rep. 107; 16 Id. 452; 2 Cranch Rep. 342; 3 A. K. Marsh. Rep. 384; 6 Pick. Rep. 322, 427; 1 Dev. Rep. 354.] A bill will lie, only where the complainant can in no other way protect himself from unjust litigation in which he has no interest. [2 Page's Rep. 201.]

The objections made to the testimony and decree at the hearing should have been entertained. And even if the bill presented a proper case for relief in equity, the decree is irregular in not adjudging that the parties should interplead; this being done, then, for the purpose of settling the conflicting claims of the defendants, the Chancellor should have directed either an action, an issue, or a reference to the master. [16 Ves. Rep. 203; 2 Paige's Rep. 570, 573.]

If the deed by which the president of a corporation transferred to Gibson some of its assets in the complainant's hands, is not good as a deed of assignment, it may be supported as an order to pay so much money when collected.

If all other objections to the decree of the Chancellor fail, it is then insisted that the corporation is a necessary and indispensable party.

N. HARRIS, for the defendants in error. The facts set forth in the bill make a proper case for an interpleader, and the bill was regularly exhibited for that purpose. [2 Story's Eq. 137, § 808; 142, § 814; 145, § 817; 133, § 806–7; 2 Paige's Rep. 570; 10 G. & Johns. Rep. 217; 13 Ves. Rep. 209; 16 Id. 203.] It is enough if a claim has been made, although no suit has been brought. [1 Smith's Pr. 473; 2 Story Eq. 137, § 808.] The want of an affiadavit denying collusion, was waived by answering the bill and claiming the fund. [Story's Eq. Pl. 237; Riley's Ch. Rep. 152; Hill's Ch. Rep. 583; Hawks. Rep. 359; Paine's Rep. 526; 2 Paige's Rep. 509; 3 Id. 505; 1 Sumner's

Gibson, et al. v. Goldthwaite.

Rep. 579, 585; 2 Caine's cases, 40, 56; 2 Johns. Ch. Rep. 369; 4 Cow. Rep. 727.]

The objections to the testimony was rightly overruled. 1. It should have been made at the time the evidence was published. [2 Mad. Ch. 411; 1 Swanston's Rep. 171; 1 Smith's Pr. 394, 413; Clay's Dig. 614; rule 21, 616; rule 38.] 2. It is no objection that a part of the evidence is in the hand writing of Butterworth. [Minor's Rep. 136.] 3. The 7th interrogatory that was unanswered was impertinent, and an answer consequently would have been immaterial.

It was not necessary that the decree should have directed the parties to interplead. [1 Smith's Pr. 474; Clay's Digest, 614, rule 22.] And if important, the irregularity was waived by the defendants below proceeding to interplead. [5 Porter's Rep. 452; 2 Ala. Rep. 415.]

The assignment by Jones to Gibson, invested the latter with no right to any portion of the assets of the corporation in the hands of the complainant. [5 Wheat. Rep. 420.] There was no order of the board of directors authorizing it, and the president of the Bank does not by virtue of his office possess such a power. [2 Kent's Com. 299; A. & Ames on Corp. 242–3–5; Story on Agency, 108; 8 Wheat. Rep. 338–360; 6 Porter's Rep. 166.]

Again: the assignment to Gibson is void and does not bind the company. [2 Kent's Com. 292; 6 Porter's Rep. 160.] This is evidenced by these facts: 1. The directors were not informed that it was made. 2. It was ante-dated and made at Jones' residence instead of the banking house. 3. Gibson was indebted to the corporation at the time in the sum of forty thousand dollars, which is still unpaid.

If the assignment to Gibson was void, he acquired no transmissible interest, and Marsh acquired no right through him to the assets of the Bank in the complainant's hands. [3 Ala. Rep. 444; 4 Johns. Ch. Rep. 536; 14 Johns. Rep. 458; Story's Ag. 131; 1 Hall's Rep. 480.]

The rejection of the testimony objected to, would not affect the decree; for the testimony of the other witnesses is sufficient to sustain the decree. If all the evidence were excluded Marsh is not entitled to a decree; because he has not shown the assent of the directors to the assignment by Jones to Gibson.

COLLIER, C. J.—A bill of interpleader lies, where two or more persons severally claim the same thing under different titles, or in separate interests from another, who, not claiming any title, or interest therein himself, and not knowing to which of the claimants he ought of right to render the debt, or duty claimed, or to deliver the property in his custody, is either molested by an action or actions brought against him, or fears that he may suffer injury from the conflicting claims of the parties. The object of the application to a Court of equity is to protect the complainant, not only from being compelled to pay or deliver the thing claimed to both the claimants, but also from the vexation attending upon the suits, which are, or possibly may be instituted against him. [2 Story's Eq. 112–3; 1 Smith's Prac. 468; Mitf. 49; Atkinson v. Monks, 1 Cow. Rep. 703.] In the case last cited, the Court say that the appropriate allegations in every bill of interpleader are, 1. That two or more persons have preferred a claim against the complainant : 2. That they claim the same thing : 3. That the complainant has no beneficial interest in the thing claimed : and 4. That he cannot determine without hazard to himself, to which of the defendants the thing of right belongs. [See also Story's Eq. Plead. 237 to 241.]

It is sufficient that each of the defendants has a claim to the matter in question, although but one of them can maintain an action at law, the principle being to prevent a plaintiff from being twice vexed. And it is not necessary that he should have been actually sued. [1 Smith's Prac. 473.] In Richards v. Salter, 7 Johns. Ch. Rep. 447, it was said, that "The bill of interpleader is equally proper, though the party be not actually sued, or be sued by one only of the conflicting claimants, or though the claim of one defendant be actionable at law and the other in equity." To the same effect are Morgan, et al. v. Marsack and another, 2 Mer. Rep. 107; Angell v. Hadden, 15 Ves. Rep. 244. True, in Barclay v. Curtis, et al. 9 Price's Rep. 661, the Court of exchequer held, that a bill of interpleader could not be entertained where the claim of one of the defendants was founded on an equitable right; but this case is not supported by authority, and we think is indefensible upon principle. [See also Darden's adm'r, et al. v. Burn's adm'r. and another, 6 Ala. Rep.]

That the claimant of money or other thing may not be wrongfully delayed, the complainant in a bill of interpleader should make an affidavit, that his bill is not filed in collusion with either of the defendants named therein, but merely of his own accord to obtain the relief sought. [1 Smith's Prac. 474; Mitf. Plead. 49; 1 Cow. Rep. 704; 2 Story's Eq. 116; Story's Eq. Plead. 237.] The object of such an affidavit, it is said, is to prevent this proceeding from being resorted to for the purpose of giving an advantage to one claimant over the other; and if it is not annexed to the bill the want of "it is in strictness a good ground of demurrer." [Story's Eq. Plead. 238; 1 Cow. Rep. 704.] But if the defendants, without thus objecting that the complainant has not negatived collusion by his affidavit, submit to answer the bill, neither of them can at the hearing, or on error, object that it was irregularly exhibited. As the affidavit was intended for their benefit, and to prevent injury or inconvenience to the defendant who has the superior right, they may dispense with it, and their answers amount to an implied waiver. [See McElwaine v. Willis and others, 3 Paige's Rep. 505.]

In Cooper and another v. De Tastet and another, 1 Taml. Rep. 177, it was held, that where goods were deposited with a warehouseman as a *private agent*, he could not maintain a bill of interpleader. This decision is placed upon the ground that an agent must account to his principal, and whether the latter had the superior title or not, a delivery of the goods to him would discharge the former from liability to a third person. The settled rule both at law and in equity is, that an agent shall not be allowed to dispute the title of his principal to property, which he has received from, or for his principal; or to say, that he will hold it for the benefit of a stranger. [2 Story's Eq. 122.] So it has been held, that, where one person receives money for another, or his agent, and the money claimed by a third person, who gives notice of his claim, a bill of interpleader will not lie; for a mere agent to receive money for the use of another cannot by notice be converted into an implied trustee. His possession is the possession of his principal. [Id. 123.]

The true limit of the jurisdiction upon bills of interpleader, it is supposed is not settled by the authorities in a very pre-

cise manner. [2 Story's Eq. 120; Bowyer v. Pritchard, 11 Price's Rep. 115.]

In Lowe v. Richardson, 3 Madd. Rep. 277, it was doubted whether a bill of interpleader would lie at the suit of a master of a ship, where the adverse claims were *paramount* to the bill of lading; although it was conceded that it was maintainable, where the parties claim adversely at law or in equity *under* the bill of lading. But subsequently, the same Court, in Morley v. Thompson, 3 Madd. Rep. 564, decided that the master might file such a bill, although the adverse claims were *paramount* to the bill of lading. Mr. Justice Story remarks upon this decision, that the bill does not seem to have been founded upon any legal adverse titles, wholly independent of each other, and not derived from a common source. [2 Story's Eq. 121.]

In the cases of adverse independent titles, it is said, the true doctrine seems to be, that the party holding the property must defend himself as well as he can at law; and he is not entitled to the assistance of a Court of equity; for that would be to assume the right to try merely legal titles, upon a controversy between different parties, where there is no privity of contract betwen them and the third person, who calls for an interpleader. [2 Story's Eq. 124.] In Crawshay v. Thornton, 2 Mylne & Craig's Rep. 1 to 23, Lord Cottenham said, that a bill of interpleader, as between principal and agent, was admissible only where the claim was under a derivative, and not under an adverse title.

In respect to the mode of proceeding, an interpleading bill is considered as putting the defendants to contest their respective claims, just as a bill by an executor or trustee to obtain the direction of the Court upon the adverse claims of the different defendants. If therefore at the hearing, the question between the defendants is ripe for decision, the Court decides it; but if it is not ripe for decision it directs an action, or an issue, or a reference to the master. [1 Smith's Prac. 472; 2 Story's Eq. 125; Angell v. Hadden, 16 Ves. Rep. 202; City Bank v. Bangs, 2 Paige's Rep. 570.]

From this view of the law, it will sufficiently appear that the objections here taken to the bill and the mode of proceeding thereon are not maintainable. The bill alledges that all

the defendants have set up a claim to money collected by the complainant, on the notes and bills placed in his hands for collection by the " Tombigbee Rail Road Company;" and that two of the defendants have brought suits at law for its recovery : that two of the defendants claim the entire sum as assignees of the corporation, and the other defendant claims a part thereof under an order or transfer by one of the assignees : that the complainant has no interest in the sum collected by him (at least beyond his commission which it is competent for him to retain,) but holds the same for the use of the party entitled thereto : that he cannot determine without hazard to himself, which of the defendants is entitled to the money and thereupon offers to bring the same into Court.

We have seen, that to authorize the complainant to file his bill of interpleader it is not necessary that all the claimants should have sued him, or that they could have sued him at law in their own names. If it were necessary to have a legal right of action, which we by no means admit, two of the defendants might sue at law in the names of the corporation for their use, if the assignments under which they claim are operative against it; and this is certainly sufficient according to the authorities which lay down the most stringent rule on this point in favor of the defendants.

The argument that the complainant being an agent of the corporation merely, cannot call upon the defendants to interplead, cannot be supported. The authorities cited merely show that a private agent cannot question the title of his principal to money or property which he has received from, or for him, by bill of interpleader, where a third person sets up a claim to it. Here the complainant does not deny the right of the corporation, *his principal,* but merely states that two of the defendants claim as its assignees the money which he holds to its credit. The defendants do not set up a title independent of, and paramount to the principal; but merely derivative. They professedly deduce their title from the same common source, and are in such a predicament that they may with propriety be required to interplead and adjust their conflicting claims.

It was supposed that the Rail Road Company is an indispensable party to the bill, and that the failure to make the cor-

poration a party is fatal to the decree. The bill is exhibited upon the allegation that the company has no interest in the money in question, but has made a transfer of the same to one or two of the claimants. If this allegation be true, the corporation has no interest in the matter litigated by the defendants, or if it has, the decree as between the defendants cannot prejudice its rights as against the parties to this suit. But be this as it may, the defendants against whom the decree has been rendered, have not been prevented by the omission to make the corporation a party, from litigating the matters which affect them; and if the cause has been properly disposed of by the Chancellor, the decree will not be reversed at the instance of those who are not prejudiced by it; especially when the want of parties is now for the first time objected.

In respect to the form of the decree, the defendants had answered and taken testimony, the cause was ripe for a hearing, and it was competent for the Chancellor to have adjusted the rights of the parties without directing an action, issue, or reference to the master. This has already been shown to be the correct practice where a case of interpleader is brought to a hearing under such circumstances. Besides, in the present case, it is shown by the record, that the parties agreed that the depositions should determine to whom the money collected on the notes and bills placed in the complainant's hands should be paid.

The answer of Gibson admits the payment of the bills of the corporation by him to the *president* of the board of directors "sometime about the month of February, A. D. 1840," and the assignment by the latter to him of the moneys to be collected by the complainant for the company—denies all fraud, but does not alledge that the act of the president was authorized, either by the charter, a by-law, or special authority. Marsh asserts a right to seven thousand dollars of the moneys assigned to Gibson, declares his belief in the honesty of the transaction between the president and Gibson, and insists it was authorized by "a general order of the board of directors authorizing its officers to give in exchange, any of its assets at par."

It is not the appropriate office of the president of the directory of a banking corporation, to use its cash or credits for the pur-

pose of settling the demands of its creditors, and in the ab‑ sence of an authority to transact such business, an assignment made of the property of the corporation, or an order given by him to pay its money to a third person, will not operate to di‑ vest the right of the corporation. This question arose in Hal‑ lowell and Augusta Bank v. Hamlin, et al. 17 Mass. Rep. 180, where it was held, that the president of the Bank had not *ex officio* the power to transfer its property or securities, and that his special authority to do it, must be shown by legal evidence. This conclusion is so clearly deducible both from general prin‑ ciples and adjudged cases as to require no argument to prove it. [See Ang. & A. on Cor. 242, to 245, and cases there cited.]

In the present case, neither the charter of the company, its by-laws, or the depositions in the cause, show the semblance of authority in the president to make the assignment to Gib‑ son. The ninth section of the by-laws, which relates more particularly to the powers and duties of the President, and is the only evidence relating to them, which need be noticed, au‑ thorizes him to call meetings of the board, &c.; gives him a general superintendance over the officers and affairs of the Bank, &c.; requires him to sign all bills and notes issued by the Bank, recommend measures for its interest, and perform such functions and duties as properly belong to his office, as well as those which may properly be assigned him by the board: *Further,* he shall have power to affix the corporate seal " to all conveyances and other necessary instruments, and sign the same on behalf of the corporation, with the approbation of the board of directors." It is too clear for illustration, that this section does not authorize the president to assign the mo‑ ney or property of the company for the payment of its debts, or any other purpose.

The testimony in the record so far from showing that the as‑ signment to Gibson was authorized or acquiesced in by the di‑ rectory, proves the reverse. The president it seems did use the assets of the Bank (which were handed to him by its attor‑ ney, when the latter resigned,) for the purpose of paying its debts; but the claims which the complainant held for collec‑ tion, were not a part of those which the attorney delivered up. Beyond this, it seems the president neither had or pretended to

have any control over the notes or other evidences of debt of which the Bank was the proprietor.

The president then, having no right to divest the corporation of the money collected by the complainant, either by a deed of assignment, or an order directing its payment, it follows, that the use of the corporate seal cannot impart validity to the transaction. And it is equally clear, that as the deed to Gibson was inoperative against the Bank, the order of Gibson to Marsh can have no efficacy. However honest and confiding the latter may have been, or ignorant of the facts of the case, he cannot be regarded as a *bona fide* purchaser without notice from a fraudulent grantee, and enjoy the rights accorded to one thus situated; for the reason that the assignor of Gibson could confer no right.

The assignment to Walsh as a trustee of the Bank was made under a resolution of the board of directors for the payment of the debts of the corporation, and certainly as against his codefendants entitle him to the money in question.

As it respects the exception to the depositions of several of the witnesses, for the failure to answer the seventh interrogatory proposed to them by Marsh, it may be sufficient to say that its pertinency is not discoverable. It calls upon them to state what amount of the bills of the Tombigbee Rail Road Company they held at a definite time, what disposition has been made of them, &c. No direct answer to this question could have affected the assignment to Walsh, or supported that to Gibson.

Other questions are suggested by the answer and proofs, but those already considered are decisive of the case, and we will add nothing more than to declare that the decree of the Court of Chancery is affirmed.