FIRST NATIONAL BANK OF CENTRAL CITY, PLAINTIFF IN ERROR, V. JONAS E. LUCAS, DEFENDANT IN ERROR.

1.   **Landlord and Tenant:** IMPROVEMENTS.   Where a landlord leases real estate, to be occupied by a tenant at a future time, and before such occupancy, without request from the tenant, makes certain improvements which are necessary to prepare the property for such occupancy, there is no legal liability against the tenant to pay for such improvements unless created by contract or agreement to pay the same.

2.  Corporations: BANK: LIABILITY OF PRESIDENT SELLING
    PROPERTY WITHOUT AUTHORITY.  As between the corporation
    and himself, a president of a bank ordinarily has no authority
    to sell the property of the corporation of which he is such offi-
    cer.   Before he can legally do so he must have authority by the
    charter, the direction of the board of directors, managing com-
    mittee, or by usage.   And where the property of a bank is sold
    by a president without authority and the bank suffers loss
    thereby, he may be held to respond in damages to the extent of
    such loss.

3.  ————: ————: PAYMENT OF LOSS: ESTOPPEL.  Where the
    president of a bank without authority disposes of the property
    of the bank, and the bank is damaged thereby, and for the pur-
    pose of making good the loss, either temporarily or perma-
    nently, transfers to the bank promissory notes held by him in
    an amount equal to the loss sustained ; and where afterwards
    he disposes of his interest in the bank and induces others to pur-
    chase a controlling interest in the stock upon the representation
    that he has no demand against the bank, he cannot afterwards
    recover of the bank the amount of the notes transferred to it
    for the purpose of making up the deficiency caused by the loss
    resulting from the sale of the bank's property.

ERROR to the district court for Merrick county.   Tried
below before Post, J.

*Webster & White* and *John Patterson,* for plaintiff in error.

*A. L. Reinoehl* and *A. Ewing,* for defendant in error.

REESE, J.

This action was instituted by defendant in error for the
recovery of the sum of $890.50, alleged to be due him
from plaintiff in error.

The allegations of the petition are as follows: "That
plaintiff from on or about August 1st, 1882, to April 1st,
1885, was a stockholder and the duly elected and qualified
president of defendant bank, and on the last date named
resigned his position as president, and disposed of his stock
and all interest and withdrew from the corporation.

"That during said time defendant in error expended out of his individual funds, for the use and benefit of defendant bank, the following items:

| | | |
|---|---:|---:|
| Court and sheriff's costs in the cause of the First National Bank of Central City, Neb., vs. Jos. N. Osterlind .................................$ | 63 | 85 |
| Attorney fee in said cause.............................. | 100 | 00 |
| Attridge & Keeney, labor in bank .................. | 30 | 10 |
| Lunquist.................................................... | 2 | 15 |
| Judgment in Hall Co., Neb., in favor of Whitney & Whitney ......................................... | 106 | 40 |
| Costs in said cause ...................................... | 18 | 00 |
| Attorney fee in said cause ............................. | 25 | 00 |
| Clerk of Nance Co. for abstract of Patrick lands.. | 20 | 00 |
| Railroad fare and expenses incurred in negotiating and discounting $6,000 in notes belonging to bank ...................................................... | 25 | 00 |

"That said amount is due and not paid. Further, said plaintiff alleges that on April 30th, 1885, he was the owner of certain promissory notes of the value of $500; that said notes were placed in the bank as his individual notes; that title had not passed from him, and that on the 30th day of April, 1885, he was entitled to the possession thereof; and that on the last mentioned date the defendant unlawfully and wrongfully converted said notes to its own use and to plaintiff's damage in the sum of $500.

"Plaintiff prays for judgment for the sum of $890.50 and costs."

The answer filed by plaintiff in error consisted of a general denial.

The trial court instructed the jury that the only items which they need consider were the charges for labor done upon the bank building, money paid for abstract of title to lands in Nance county, money paid as expenses in traveling to Fullerton, Omaha, and Lincoln in the negotiating of the notes of the bank, and the charges of conversion of

the $500 in notes, thus withdrawing from the consideration of the jury the other items of the account.

The verdict of the jury was in favor of defendant in error for the sum of $453.30, upon which judgment was rendered. One of the grounds alleged in the motion for a new trial and the petition in error is that the verdict is not sustained by sufficient evidence.

Referring to the item of $30.10 paid Attridge & Keeney for labor in bank, we find the testimony of defendant in error as shown by the abstract to be as follows: "I was the owner of the building, and rented it to the bank. I made improvements. This bill was for work on counter and around the vault. The work was done before the bank moved in. I brought this up before the directors, and they did nothing with it." This is all the evidence we find on this item of account. If this were all, and by the record we must presume it was, there was nothing to support a verdict for the value of labor mentioned. It is true that if the labor was done by the procurement of the bank, or if it agreed to pay for the improvements made prior to its occupancy of the building, it would be bound by its contract. But there is nothing disclosed which would show any such procurement or contract on its part. It follows therefore that this item also should have been withdrawn from the consideration of the jury. The instruction withdrawing a part of the account substantially informed the jury that they might consider the remaining portion. There was no evidence to support a verdict for the item named.

The principal contention is as to the second alleged cause of action contained in the petition of defendant in error. The allegation is that on the 30th day of April, 1885, he was the owner of certain promissory notes of the value of $500; that said notes were placed in the bank as his individual notes; that he was entitled to them, and plaintiff in error had converted them to its own use to his damage, etc.

From the abstract of the testimony it appears that about the time of the organization of the bank an exchange committee, was formed, consisting of defendant in error, who was president of the bank, J. J. Chadwick, who was cashier, C. S. Lucas, about whose eligibility there was some question, and one other person, whose name is not given.    This committee was formed under the by-laws of the corporation, and it was their duty to formulate rules and regulations by which the president and cashier were to be governed in making discounts, and in buying notes and in making rediscounts.    In the latter part of 1884 the bank was the owner of promissory notes to the amount of $6,000, drawing interest at nine per cent per annum, which were secured by mortgage on real estate.    Defendant in error sold these notes for the sum of $5,500 in money.    In his testimony defendant in error testified that the notes were well secured "and were worth dollar for dollar on the market."    This sale was made without any direction or authority from the exchange committee, and was never ratified by them or by the board of directors or the stockholders.    The only evidence of any authority to make the sale was to the effect that defendant in error and J. J. Chadwick had a conversation upon the subject, and agreed that $5,500 in money was worth more than $6,000 in notes.    C. S. Lucas objected to the sale.    After the sale, whether upon the demand of the directors of the bank or not is not shown, defendant in error placed the notes referred to in the bank to make up the deficiency occasioned by the loss on the notes sold.    The amount represented by the notes transferred to the bank is not given, but it is to be inferred that it was more than $500, as a certificate of deposit for the amount in excess of that sum was given him to be paid when collections were made.    It seems to be quite clear that at the time the transfer of the notes was made it was understood to be for the purpose of repaying the loss to the bank occasioned by the improvident

sale of the $6,000 of notes. It is also equally clear that defendant in error so understood it, and that he had no expectation of receiving either the notes or their value from the bank.

The sale of the $6,000 notes was without authority. At least none is shown. No rules or regulations had ever been made by the exchange committee which would authorize it, and it was not authorized by the board of directors. There is nothing in the act concerning the organization of national banks which would authorize it, and it is not shown to have been the custom of the bank to permit the president to make such sales to be subsequently ratified. Ordinarily the authority of a president of a bank, as such, is very much limited. He may bring an action at law and employ counsel for the purpose of protecting the rights of the bank, but he is not its executive officer nor has he charge of its moneyed operations. He has no more power of management, or disposal of the property of the corporation, than any other member of the board of directors. Morse on Banks and Banking, 146 *et seq.* It is true that extensive powers may be, and are, quite often, given to presidents of banking organizations by the charter of the bank or by the action of the managing board, and where so conferred, the right to proceed thereunder will exist; but there is no proof in this case, shown by the abstract, of any such power.

The fifth instruction given to the jury by the court is as follows: "The plaintiff, as president of the defendant bank, had the authority to sell and dispose of the notes belonging to said defendant when necessary or proper for the interest, or in order to protect the credit, of said bank, and money honestly and necessarily expended for railroad fare in negotiating said securities, or for abstract of title to lands mortgaged would be a just and legal demand against the defendant."

As we have seen, in the light of the testimony before us,

that part of the instruction which informs the jury that, as matter of law, the president had authority to dispose of the notes of the bank, was erroneous.

There is an additional reason why we think the verdict was not sustained by the evidence. This is shown by the uncontradicted testimony of N. R. Persinger, which we here copy in full:

"N. R. Persinger called and testified: Am a resident of Central City; am president of the First National Bank and was so engaged on 1st of April last. At or about that time I purchased some $38,000 and agreed to make purchase of stock up to $42,000 in bank. About the middle of February, 1885, Lucas came to me and proposed to sell me a controlling interest in bank. After some conversation J. J. Chadwick and Mr. J. E. Lucas at that time entered into a contract to sell me for $26,000 a controlling interest. I asked for a statement of liabilities and resources, which was furnished, and upon strength of which we entered into an agreement. The statement was furnished me about February 14th. The same was never claimed to be untrue until some five or six months after I purchased a controlling interest in the bank. He made no demand, merely handed me a list which he said the bank owed him. I knew of no claims until after my purchase. The statement furnished me purported to be a tabular statment of all liabilities and resources. Cross-examination: The statement is a transcript of the balance sheet. Contract I first made was to take possession of the bank on the 30th of April, and they sold stock to Lazear, and I took possession April 20th. I looked over the books. I made my bargain upon the strength of statements that I supposed correct, and disputed items should have appeared. I purchased the bank from the stockholders through Lazear, their agent. Lucas and Chadwick had sold their interest. Lucas said if I became purchaser he had no claims. Lucas and Chadwick sold to Lazear, and after the sale both came to me

and urged me to buy, and said that whatever I made out of the books they would stand by. Re-direct: Notes deposited—Fagerstrom paid his. Wallenstein, maker of other two notes, came in and said they were obtained by fraud. I finally got him to execute a new note for the one then due. Both notes are unpaid. There was some kind of a statement attached to these notes showing their discount to the bank. There was also a certificate of deposit attached and stamped paid. The statement said portions of notes when collected should be paid to Lucas. The amount to be paid was the amount of the certificate."

The only testimony introduced which tended in any degree to contradict the foregoing was that of Mr. Chadwick on rebuttal, which we here give in full from the abstract:

"Chadwick recalled: Statement is in my hand-writing. I handed same to Persinger in presence of Lucas, and said it contained a copy of the balance sheet for that day, and said it was not exactly correct. I said loans and discounts did not agree with statement. Cross-examination: Am a practical book-keeper. I said bills receivable did not correspond with that statement. I said the books were in the same condition. I don't remember now what was the difference. We thought bills receivable overrun that day, but we were mistaken; they were short that amount."

It will be seen that this falls far short of contradicting the testimony of Mr. Persinger, that he knew of no claims of defendant in error until after his purchase of the stock, and that defendant had told him that if he became the purchaser he (defendant in error) had no claims. Defendant in error testified in the cause during the trial. He was, no doubt, present in court at the time Persinger gave his testimony, yet he failed to go upon the stand and rebut it. We can call to mind no rule of law which would permit him, by the representations described, to induce another to expend his money in purchasing the stock, and after the purchase is made upon the faith and credit of his statements,

to turn about and recover for demands which he had declared did not exist.   Upon the contrary we think the rule of law to be well settled, that where one, by his words or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.   Bigelow on Estoppel, 4th ed., 547, and cases there cited.   *Newman v. Mueller*, 16 Neb., 527.

It may be truthfully said that this action was not against Persinger and that he was not a party to the suit as shown by the record.   This is true; but the fact still remains that the effect would be the same, since by the representations of defendant in error Persinger was induced to expend his money in purchasing a controlling interest in the bank.

For the foregoing reasons a new trial should be awarded.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.