894

MILDRED S. MARTIN, APPELLANT, V. ST. PAUL STATE BANK, APPELLEE.

FILED APRIL 30, 1936. NO. 29648.

*Cleary, Suhr & Davis* and *Davis & Vogeltanz*, for appellant.

*Prince & Prince* and *T. T. Bell, contra.*

Heard before GOSS, C. J., GOOD, DAY, PAINE and CARTER, JJ., and FITZGERALD, District Judge.

CARTER, J.

In this case the plaintiff sued the St. Paul State Bank on a promissory note in the principal sum of $6,500. The trial court directed a verdict for the defendant. From the overruling of her motion for a new trial, plaintiff appeals.

On and prior to January 24, 1930, Dr. F. S. Nicholson was the owner of certain lands in Perkins county subject to a first mortgage in favor of T. T. Bell for $4,000, and a second mortgage in favor of Ches Chinn for $5,000. On the above date, Dr. Nicholson gave a third mortgage to the St. Paul State Bank in the amount of $7,000. On June 10,. 1931, Mary C. Nicholson, who had become the title owner, conveyed the lands to the St. Paul State Bank, subject to the two prior mortgages. On June 12, 1931, the second mortgage was extended for two years at the instance of the St. Paul State Bank. On November 18, 1931, a new note was. executed as of the date of June 12, 1931, due three years from its date, in the amount of $6,500, which was signed by C. E. Arterburn as vice-president of the St. Paul State Bank. A new mortgage was given to secure this note on

November 18, 1931, which was signed in the same manner as the note. Subsequently, Bell foreclosed his first mortgage and took title to the land. Plaintiff, who had become the owner of the second mortgage, then commenced this action on the $6,500 note.

The evidence shows that on or about June 5, 1930, the St. Paul State Bank went out of business and surrendered its charter to the department of trade and commerce of the state of Nebraska. The St. Paul State Bank alleges in its answer that it was a nonexistent corporation at the time the note and mortgage were executed, and that C. E. Arterburn, as vice-president of the St. Paul State Bank, did not have authority to sign the note sued upon.

It is not disputed that the St. Paul State Bank had not become liable for the payment of the indebtedness prior to November 18, 1931. The only question for determination, therefore, is whether the acts of C. E. Arterburn, as vice-president on November 18, 1931, in signing the note in suit, obligated the bank to pay the debt.

The evidence discloses that on November 18, 1931, the plaintiff, Ches Chinn, C. E. Arterburn and W. S. Paul held a conversation in the St. Paul National Bank relative to the second mortgage on the Perkins county land and the indebtedness it was given to secure. Arterburn and Paul were officers of the St. Paul National Bank and were also officers of the St. Paul State Bank at the time it went out of business. Arterburn and Paul testified that plaintiff stated that she was the owner of the second mortgage, that it had outlawed or been mislaid, and that she wanted something done that would reinstate her lien on the land. The result of the conversation was that plaintiff, Arterburn and Chinn went to the office of T. T. Bell, an attorney in St. Paul, who was also a director in the St. Paul State Bank at the time it closed. The note involved in this action and the mortgage given to secure it were drawn up by Bell and signed by Arterburn, as vice-president of the St. Paul State Bank at that time. All of the officers and directors of the St. Paul State Bank testified that they never knew that Arterburn signed

the note until suit was brought upon it. The matter was never brought to the attention of the board of directors of the St. Paul State Bank. Assuming that the St. Paul State Bank was an existing corporation, and that Arterburn was still its vice-president, does his act in signing the note make the St. Paul State Bank liable for its payment? We think not. A vice-president of a bank, without authority granted by the bank's board of directors, and in the absence of an established usage acquiesced in by them, cannot bind the bank by agreeing to pay a debt upon which the bank was not previously liable. It has been held that a president of a bank has no implied power, by virtue of his office, to sell or mortgage property of the corporation. *Leggett v. New Jersey Mfg. & Banking Co.,* 1 N. J. Eq. 541. In *Montgomery Bank & Trust Co. v. Walker,* 181 Ala. 368, 61 So. 951, the court, in discussing this subject, said: "This rule applies to presidents of banks as well as presidents of other corporations, and who have no authority other than what is expressly granted by the charter, by-laws, etc. *Gibson v. Goldthwaite,* 7 Ala. 281, 42 Am. Dec. 592; *Spyker v. Spence,* 8 Ala. 333. 'He has no more power of management or disposal over the property of the corporation than any other single member of the board. These remarks, of course, refer to his inherent powers enjoyed *virtute officii,* for, of course, if any resolution or any established usage gives him the power, either at all times or under special circumstances, to draw against the corporate deposits, he may do so within the limits of the power. * * * When the general management of the affairs of the bank is left, as is customary, with the directors, the president has not power to mortgage, assign, or pledge any more than he has to dispose otherwise of any of its property of any description whatsoever, or for any purpose, however justifiable and proper in itself.' Morse on Banking, secs. 143, 144. It has been held, however, in many cases that, where the president has no inherent power, he binds the bank in many instances by usage or express authority. 'The cases, though largely occupied in deciding that a president has no authority by

virtue of his office, yet hold the bank bound by his action whenever the charter, or a vote of the directors, or usage of the bank, or long acquiescence by the bank in a course of action by the president, or any facts constituting a holding out of the president by the bank as having a right to act for it, lay a foundation for authority actual or inferred, and whenever the bank has ratified his action.' "

In *First Nat. Bank v. Lucas*, 21 Neb. 280, 31 N. W. 805, the court said: "The sale of the $6,000 notes was without authority. At least none is shown. No rules or regulations had ever been made by the exchange committee which would authorize it, and it was not authorized by the board of directors. There is nothing in the act concerning the organization of national banks which would authorize it, and it is not shown to have been the custom of the bank to permit the president to make such sales to be subsequently ratified. Ordinarily the authority of a president of a bank, as such, is very much limited. He may bring an action at law and employ counsel for the purpose of protecting the rights of the bank, but he is not its executive officer nor has he charge of its moneyed operations. He has no more power of management, or disposal of the property of the corporation, than any other member of the board of directors. Morse on Banks and Banking, 146 *et seq.* It is true that extensive powers may be, and are, quite often, given to presidents of banking organizations by the charter of the bank or by the action of the managing board, and where so conferred, the right to proceed thereunder will exist; but there is no proof in this case, shown by the abstract, of any such power."

A vice-president certainly has more limited powers than the bank president. There is no evidence in the case at bar that the vice-president had been authorized to sign the note either by resolution of the board of directors, by usage of the bank, or by acquiescence of the bank in a course of action pursued by the vice-president. We are therefore obliged to hold that C. E. Arterburn, as vice-president of the St. Paul State Bank, did not have the power, by virtue of his office, to bind the bank for the payment of the indebtedness

in question and, there being no specific authority granted, the bank is not bound by his act in signing the note for the bank.

The trial court rightfully directed a verdict for the defendant. The judgment is therefore

AFFIRMED.