# Conley *et al. v.* Alabama Gold Life Insurance Company.

## *Bill of Interpleader.*

1. *Bill of interpleader; what it should show.*—A bill of interpleader should state distinctly the nature and character of the conflicting claims which are asserted to the debt, duty, or obligation the plaintiff admits rests upon him, and ability and willingness to discharge which, when he may do so safely, he avows; and the parties who prefer the claims, and have the capacity of enforcing them must be brought before the court.

2. *Same; complainant must stand as stake-holder between claimants.*—The complainant in a bill of interpleader must show, to maintain it, that he has no interest in the controversy to be waged between the claimants, is indifferent between them, and stands in the relation of a mere stake-holder, or depositary.

3. *Same; cannot be maintained when claims arose by wrongful act of complainant.*—A court of equity will not interfere by bill of interpleader for the relief of one who stands to either of the claimants in the relation of a wrong doer, or who has caused the double claims by his own acts or conduct.

4. *Same; when insurance company can not maintain as to policies.*—An insurance company, which, at the request of the assured, voluntarily cancelled his policies, and issued them anew, changing only the names of the beneficiaries, does not stand indifferent between them; the two sets of policies represent different debts and duties, and in the defeat of one of them the company has such an interest as to prevent it from maintaining a bill of interpleader.

APPEAL from Mobile Chancery Court.

Heard before Hon. H. AUSTILL.

This was a bill of interpleader, filed by the Alabama Gold Life Insurance Company against Mary Carnes Conley, Mary Conley Woodruff, and George Woodruff. On the 22d of February Patrick C. Conley insured his life in the Alabama Gold Life Insurance Company for $2,000, in favor of his wife, Mary Conley. At the time of the death of Mrs. Conley, this policy was in full force. After her death P. C. Conley surrendered this policy, and caused a new one to be issued, payable to John Wylie, as trustee for Mary Conley Woodruff, a niece and heir at law of his deceased wife. Mrs. Conley left no children, and Mary Conley Woodruff and George C. Woodruff were her heirs at law. The policy issued to Wylie bore the same number, the same date, called for the same premium as the original policy, and referred to the same application on which that policy was issued. Patrick C. Conley, in 1873, married the appellant, Mary Carnes Conley, and after his marriage returned this second policy, and caused another

one to be issued in favor of his second wife, Mrs. M. C. Con-
ley. He then discovered that in his application for the orig-
inal policy he had misstated his age, and the policy was
again returned, and another one issued to Mrs. M. C. Conley,
with the age corrected. There was no change in the date of
the policy ; the number, 180, remained the same ; they were
all based on the same application, and called for the same
premiums, except after the correction of the age of the as-
sured. On the 24th of May, 1872, P. C. Conley procured
another on his life from the same company, for $5,000, in fa-
vor of John Wylie, as trustee for Mary C. Woodruff, and af-
ter his marriage to Mary Carnes Conley, he also returned
this policy to the company and caused another one to be is-
sued in favor of his wife. On the 24th of May, 1874, he
failed to pay the premium, and on the 26th of May, 1874, he
returned this policy and demanded the issue of another in
favor of his wife, M. Carnes Conley, which was issued on
payment of the premium. This policy was also returned for
correction of the age of the assured. These policies were
all numbered 2763, were all dated May 24, 1872, and called
for the same premiums. It was based on the original ap-
plication for the issue of policy number 180, and no medical
examination was made after the issue of the latter policy.
At the time these changes were made in the names of the
beneficiaries of the policies the secretary of the insurance
company informed P. C. Conley that they were made sub-
ject to the laws of the land. Patrick C. Conley died on the
24th day of July, 1879, and Mary Carnes Conley filed proofs
of his death, and claimed the proceeds of the policies. The
insurance company refused to pay her, and thereupon she
brought suit against it in the City Court of Mobile, to recover
the amount of the policies. On December 11th, 1879, Messrs.
J. L. & G. L. Smith sent a notice, in writing, to the company
that, "on the request of Mr. George F. Moore, the attorney
for G. C. Woodruff, you are notified that said Geo. C. Wood-
ruff claims one-half the amount due on policy numbered 180,
issued in favor of Mary Conley in 1869. * * * If you
pay otherwise than according to this demand you will do so
at your peril, and that you may act advisedly we take the
liberty of referring you to the decision in the case of *Chapin
v. Fellows,* 36 Connecticut, 132." The company, thereupon,
filed this bill of interpleader, making said Mary Carnes Con-
ley, John Wylie, as trustee, Mary Conley Woodruff, and
George C. Woodruff, parties defendant. Mary Carnes Con-
ley demurred to the bill, on the ground : 1. That the bill
shows that if there was any interest adverse to the claim of
the defendant, Mary Carnes Conley, then complainant was a

wrong-doer to those claiming such adverse interest, and a bill of interpleader can not be sustained. 2. Because the bill shows that the complainant made the changes in the policies with full notice of the facts. 3. Because by issuing a policy to Mary Carnes Conley, the complainant incurred a separate liability to her, and in such cases a bill of interpleader will not be sustained. This demurrer was overruled. There was no answer of demurrer filed by G. C. Woodruff. There was an answer filed by the trustee, John Wylie, and by Hannis Taylor, Esq., who had been appointed her guardian *ad litem* for Mary Conley Woodruff, in which she claimed the proceeds of policy number 2763, and one-half of number 180. The Chancellor rendered a decree directing that the parties should interplead, and also directed the money arising from the policies to be paid into court. This decree, and also that overruling the demurrer, are assigned as error.

BOYLES, FAITH & CLOUD, for appellant.—(No brief on file.)

OVERALL & BESTOR, for the Life Insurance Company.—The rights of the parties grow out of a contract in this case, and the cases relating to the inability of a wrong-doer to sustain a bill of interpleader are founded on some trespass or conversion of property. The *fund* is the mattter in controversy here. The policies were originally payable to other parties than Mary Carnes Conley, but she now has them and claims the whole amount of them. The question then arises, did the assured, P. C. Conley, have a right to change the beneficiaries? The following authorities hold, that when the contract of insurance becomes consummated, it becomes a vested right between the beneficiary and the company, provided there has been no lapse, and issue of a new policy.—*Chapin v. Fellows*, 36 Conn. 132 ; *Gould v. Emerson*, 99 Mass. 154 ; *Fraternal Life Ins. Co. v. Applegate*, 7 Ohio State, 292 ; *Potter v. Spillman*, 117 Mass. 322 ; *Fortescue v. Barnett*, 3 Milne & Keene, 36 ; Bliss on Ins. §§ 339, 340 ; May on Ins. § 392 ; 5 Ins. Journal. 307 ; 4 Central Law Journal, 347.

There was then some doubt, in point of fact, to which claimant the debt or duty belongs, so that the complainant could not safely pay or render it to one, without risk of being made liable to the same duty or debt, by the other.—8 Paige, 347 ; 4 Paige, 392. The insurance company is not interested in the question as to whom the fund belongs, but is a mere stake-holder, and the specific fund in controversy is not affected by the fact that the insurance company changed the names of the beneficiaries in the policies, at the request of

the assured, or by any question as to whether the company acted negligently or wrongfully in doing so.—*Salisbury Mills v. Townsend*, 109 Mass. 115. If there could exist any well founded doubt, which we cannot believe, as to the right of complainant to file this bill as a strict interpleader, then there is another class of cases that the facts apply to, which is this: whenever the legal title to property or fund is in dispute, so that complainant cannot ascertain to whom it belongs, he can file a bill in the nature of a bill of interpleader, and get the direction of the court to whom to pay the money, and ask its protection against the claims of both, on complying with the order of the court.—4 Paige, 392–3 ; 2 Daniel Ch. Prac., note, p. 156ʋ ; *Farley v. Blood*, 10 Foster, 360.

HANNIS TAYLOR, for Mary C. Woodruff.

GEO. F. MOORE, and J. L. & G. L. SMITH, for G. C. Woodruff.

BRICKELL, C. J.—A bill of interpleader should state distinctly the nature and character of the conflicting claims which are asserted to the debt, duty, or obligation the plaintiff admits rests upon him, and ability and willingness to discharge which, when he may do so safely, he avows ; and the parties preferring such claims having the capacity of enforcing them, must be brought before the court.—2 Dan. Pr. 1560. We shall pass without special comment the omission from the bill of all averment that there is any personal representative of Mary Conley, to whom it is averred the first policy of insurance was payable, and to whom alone, and not to her next of kin, any valid claim to the policy surviving her, would have passed necessarily by operation of law. We shall also pass without any particular comment the failure to aver that Wylie, as trustee of Mary Conley Woodruff, has made or preferred any claim because of the policies which were payable to him. These omissions render the bill demurrable (2 Dan. Ch. Pr. 1560), but they are not made causes of demurrer, and if they had been, could, it may be, have been cured by amendment. There are other grounds of objection to the bill more serious, and fatal to the relief sought, in any aspect of the case.

It is not every case in which a party may be liable to double vexation, or in which, by different or separate interests, two or more persons claim of him the same thing, or the same debt or duty, that a court of equity will come to his assistance, and compel the claimants to interplead. The party must show that he stands not only indifferent between

the claimants, that he is without interest in the controversy to be waged between them, but it must also appear that he is in the relation of a mere innocent stake-holder, or depository, and that by no act on his part the embarrassment of conflicting claims and the peril of double vexation has been caused. When he stands to either of the parties in the relation of a wrong-doer, or it appears that by his own act or conduct double claims have been caused, he is not innocent, he is not without interest, and the court will not intervene to relieve him from the embarrassment in which he has voluntarily involved himself.—*Shaw v. Coster*, 8 Paige, 339 ; *Quinn v. Green*, 1 Ired. Eq. 229 ; *Crawshay v. Thornton*, 2 Myln. & Cr. 1 ; *Desborough v. Harris*, 5 DeG., M. & G. 439 ; *Cochran v. O'Brien*, 2 Jones & La. T. 380 ; *Sublichish v. Russell*, 2 L. E. Eq. Cases, 441. If there is any strength in the claim of the appellant, Mary Carnes Conley ; if she has any right or interest conflicting with that of the parties to whom the original policies were payable, or if they have claims superior to hers, which are affected by the policies payable to her ; if there is embarrassment of conflicting claims, and the insurance company stands in peril of double vexation and double liability for the same debt or duty, it is obvious the embarrassment and peril spring from its own voluntary acts and conduct, and not from the acts and conduct of either of the claimants. The theory underlying the claims of the beneficiaries in the first policies is, that by the policies a perfect voluntary trust was created, irrevocable and indestructible by any act of the insurer or the assured ; that the subsequent change of the policies was a wrong, a violation of the trust, and works no forfeiture or deprivation of their rights. The soundness of this theory we do not deem it necessary to discuss. If there be force in it, the insurance company, by making the change in the policies, has given rise to the rival claims upon it, and has committed a wrong against the original beneficiaries. It is not the office of a court of chancery to relieve them from the consequences of the wrong, or the double liability incurred by their erroneous conduct. Nor can it be just that the court should intervene and compel litigation between parties who, it may be, have each valid claims against the company, and no cause of controversy between themselves. It is not possible, in view of the facts alleged, that Conley would have continued the payment of premiums, keeping the policies in life, unless the change in beneficiaries had been made corresponding to his changed relations and duties. Into such payments he was induced by the voluntary act of the company, and by the confidence the company created, that on his death the new policies would

be paid to the wife, for whose benefit they were taken, and to whom they are payable.  It is true, it is averred he was informed the change of beneficiaries was made *subject to the laws of the land*, whatever that may mean.  There was no reluctance in making the change, in the acceptance and cancellation of the old policies, and issuing them anew payable to the living wife, to whom he owed the duty of providing sustenance, if she survived him.  No greater injury could be done the company, no more serious shock given to its policy holders, than to declare this mode of dealing was without legal efficacy, because of the rights and interests of former beneficiaries, of which the company had full knowledge, and against liability to whom it is now supposed it can protect itself only by a repudiation of the obligation of the new policies.  If there be any real peril of double vexation for the same debt or duty ; if there are, in fact, conflicting claims, they have their origin and life in the conduct, in the act, of the insurance company, not in the act or conduct of either of the claimants, and it is against their acts, and not its own, the insurance company can ask relief.

The insurance company assumes that the several policies represent the same debt or duty.  They are the representatives of different debts and duties created by their own voluntary act, owing to different persons between whom the company does not stand indifferent.  If the first policies created a trust which survives the failure and refusal of Conley to pay the premiums, that can not affect the validity of the latter policies, in which Mary C. Conley is the beneficiary, or draw her into a controversy with the claimants under the first policies, or them into a controversy with her, that the insurance company may be relieved from its duty to either.  The company has a direct personal interest, according to the averments of the bill, in defeating the claim of one or the other of the defendants, and having that interest, has no right to an interpleader.  We will not consider any question touching the validity of these policies.

The demurrer was well taken, and should have been sustained.  The decree of the Chancellor is reversed, and a decree here rendered dismissing the bill.