# Kyle v. Mary Lee Coal & Railway Co. *et al.*

*Bill in Equity for Interpleader.*

1. *Bill for interpleader; dependence of claims, or their derivation from a common source, necessary for maintenance of bill.*—A condition precedent to the assertion of the equitable remedy of interpleader is, that all the adverse titles or claims to the property or debt, in reference to which the bill is filed, must be dependent, or be derived from a common source; and where there is no privity between the different claimants, and their titles are not derived from a common source, but each is asserted to be paramount to and wholly independent of the others, a court of equity will not grant an interpleader.

2. *Same; right of stakeholder to maintain bill; character of his interest; surety on claim bond.*—The equitable remedy by interpleader will not lie at the instance of one who has an interest in the result of the controversy between the different claimants, but he must stand

[Kyle ·v. Mary Lee Coal & Railway Co. *et al.*]

indifferent between them—in the position of a mere stakeholder—and must not have incurred any independent liability to either of the claimants; and hence a surety on a claim bond in whose possession the property has been left by the principal can not resort to such a remedy, when different claims to the property are presented by several respective claimants.

3. *Same; same; facts of this case.*—On a bill filed for interpleader, it is shown that upon the levy of an attachment upon the property in controversy a claim was interposed thereto; that upon the execution of a claim bond upon which complainant was a surety, the property, at the instance of the claimant, was delivered to the complainant; and that while the property was thus in his custody an action of detinue was brought therefor and other attachments were levied thereon, and all the other creditors of the defendant in attachment threatened to sue the complainant. *Held:* that as to the bond the complainant stands in the place of his principal·for delivery of the property and subject to the same liabilities; and, therefore, he has such an interest in the suit as prevents his being a mere indifferent stakeholder, and precludes him from invoking the intervention of a court of equity on his bill seeking an interpleader.

4. *Bill without equity; when properly dismissed on motion; amendment.*—When a bill does not contain equity and can not be amended so as to give it equity, it is not error to dismiss it, on motion made therefor.

APPEAL from the City Court of Gadsden, in Equity.
Heard before the Hon. JOHN H. DISQUE.

The bill in this case was filed on October 28, 1895, by the appellant, Robert B. Kyle, against the appellees.

It was averred in the bill that on the 4th day of August, 1893, the Mary Lee Coal & Railway Company caused and procured an attachment issued out of the city court of Gadsden at the suit of the Mary Lee Coal & Railway Company against the Etowah Furnace Company, to be levied on a certain lot of pig iron; that on the 17th day of August, 1893, the Alabama Great Southern Railroad Company made affidavit and gave bond to try the right of property to a portion of said pig iron; and that at the request of the Alabama Great Southern Railroad Company complainant became a surety on the claim bond furnished by the said railroad company in said claim suit and the pig iron claimed by said company was left with complainant for safe keeping, and to be delivered to whomsoever the court might adjudge delivery should be made.

It was further averred that on the 16th day of Janu-

[Kyle v. Mary Lee Coal & Railway Co. *et al.*]

ary, 1894, E. L. Knox and Walter Knox, partners under firm name of E. L. Knox & Co., commenced an action of detinue in the city court of Gadsden, to recover 202 tons of said pig iron ; that E. L. Knox & Co. claim to own said pig iron, and are pressing said action of detinue against complainant ; that the Alabama 'Great Southern Railroad Company also claims said pig iron under an alleged mortgage given by the Etowah Furnace Company who produced said iron ; that the remainder of said pig iron is claimed by the Chattanooga National Bank, of Chattanooga, Tennessee, which said bank threatens to institute proceedings against complainant to recover the said pig iron ; that the entire lot of pig iron described is claimed by the Alabama Great Southern Railroad Company, which said railroad company is prosecuting its claim suit to enforce its claim to the same ; that the Mary Lee Coal & Railway Company also claim that the said pig iron, at the time of the levy of the attachment, was the property of the Etowah Furnace Comany, and subject to its attachment ; that subsequent to the levy of the Mary Lee Coal & Railway Company's attachment, the Dora Coal Mining Company, the Queen City Electric Light Company, and Fitzgerald & Smith, a partnership composed of P. S. Fitzgerald and one Smith, each caused an attachment to be levied on said pig iron subject to the levy made by the Mary Lee Coal & Railway Company. It was further averred that complainant has and claims no interest whatever in said pig iron, and is simply desirous of relieving himself from all responsibility in regard thereto ; that he is ready and willing to deliver the iron to whomsoever is lawfully entitled thereto, and submits himself to the jurisdiction of the court and offers to abide and perform its decrees and orders ; but that he is in danger of loss growing out of the conflicting claims set up to said pig iron and the further prosecution of the suits in a court of common law until the conflicting claims of all parties in interest can be heard and determined.

The different parties and corporations mentioned in the bill as claiming the pig iron in question, were made parties defendant ; and the prayer of the bill was that said respondents should be enjoined from prosecuting their suits and claims until further order by the court in which the bill was filed ; and that said respondents be

required to propound their claims to the said pig iron and to interplead with each other in reference to said pig iron, and that the court would determine and adjust the conflicting claims and determine the rights of the respective respondents to said iron. The respondents moved to dismiss the bill for the want of equity. Upon the submission of the cause upon this motion, the city court judge, sitting as chancellor, sustained said motion, holding that there was no equity in the bill. From this decree the complainant appeals, and assigns the rendition thereof as error.

GOODHUE & SIBERT, for appellant, cited, *Crass v. M. & C. R. R. Co.*, 96 Ala. 447 ; *Conley v. Ala. G. L. Ins. Co.*, 67 Ala. 472.

DENSON & BURNETT and DORTCH & MARTIN, *contra.* The position of Kyle was assumed by him of his own volition. Being surety on the claim bond, or by reason of his participancy in the claim suit, he is not innocent, is not without interest ; and by his own act, in part, the double claims have been caused. One occupying this attitude can not intervene to relieve himself of the embarrassment in which he has voluntarily involved himself. This is substantially the language of BRICKELL, C. J., in the case of *Conley v. Ala. G. L. Ins. Co.*, 67 Ala. 426. Again, he is such agent, depositary or bailee, of one of the parties, as disqualifies him from filing a bill of interpleader.—3 Pomeroy's Eq. Jur., §§ 1323 *et seq* ; *Ib.*, §§ 1326-28.

HARALSON, J.—1. One of the essential elements of the equitable remedy of interpleader, as laid down is, that all the adverse titles or claims to the thing or debt, in reference to which the bill is filed, must be dependent, or be derived from a common source. "Where there is no privity between the claimants, where their titles are independent, not derived from a common source, but each asserted as wholly paramount to the other, the stake-holder is obliged, in the language of the authorities, to defend himself as well as he can against each separate demand ; a court of equity will not grant him an interpleader."—3 Pom. Eq. Juris., §§ 1323,

1324; Story Eq. Pl., § 293; *Gibson v. Goldthwaite*, 7 Ala. 281.

The bill in this case does not aver a privity between the claimants, nor that their title to the property in question as to all the defendants, is derived from a common source. As to the claim of the several defendants, all that is averred as to the title is, that the Mary Lee Coal & Railway Company caused and procured an attachment to be issued out of the city court of Gadsden, in its favor, against the Etowah Furnace Company, and levied on the property in question; that the Alabama Great Southern Railroad Company claims said pig iron under an alleged mortgage given by the Etowah Furnace Company, which produced said iron; that Knox & Co. commenced an action of detinue in the city court of Gadsden, to recover 202 tons of said iron,—a part of the whole lot in complainant's hands,—and claim to own the same, but how or from whom they derived title is not averred; that the remainder of the said lot of iron not claimed by said Knox & Co., is claimed by the Chattanooga National Bank, for which it threatens to institute suit against complainant, but its claim or source of title is not stated; that the Dora Coal Mining Company, The Queen City Electric Light Company, and Fitzgerald & Smith, each caused an attachment to be levied on said pig iron, subject to the levy of the attachment theretofore levied by the Mary Lee Coal & Railway Company on said iron, but the claims and source of title of neither of said parties defendant are stated in the bill. The bill, therefore, in these respects falls short, in its essential averments, of a bill of interpleader. On a motion to dismiss for want of equity, however, the defects would be regarded as amendable, and the bill would not be dismissed absolutely on account of them.

2. Another essential element for the maintenance of such a bill, as laid down by the authorities is, that the complainant must not have incurred any independent liability to either of the claimants. He must stand perfectly indifferent between them, in the position of a mere stake-holder. The principle is thus stated by Mr. Pomeroy: "In the first place, the agent, depositary, bailee, or other party demanding an interpleader, in his dealings with one of the claimants, may have expressly acknowledged the latter's title, or may have bound him-

self by contract, so as to render himself liable upon such independent undertaking, without reference to his possible liability to the rival claimant upon the general nature of the entire transaction. Under these circumstances, as the plaintiff is liable at all events to one of the defendants, whatever may be their own respective claims upon the subject matter as between themselves, he cannot call upon the defendants to interplead. He does not stand indifferent between the claimants, since one of them has a valid legal demand against him at all events."—3 Pom. Eq. Juris., § 1326.

In *Conley v. Ala. Gold Life Ins. Co.*, 67 Ala. 472, it was said: "It is not every case in which a party may be liable to double vexation, or in which, by different or separate interests two or more persons claim of him the same thing, or the same debt or duty, that a court of equity will come to his assistance, and compel the claimants to interplead. The party must show that he stands not only indifferent between the claimants, that he is without interest in the controversy to be waged between them, but it must also appear that he is in the relation of a mere innocent stake-holder or depositary, and that by no act on his part the embarrassment of conflicting claims and the peril of double vexation has been caused. When he stands to either of the parties in the relation of a wrongdoer, or it appears that by his own act or conduct, double claims have been caused, he is not innocent, he is not without interest, and the court will not intervene to relieve him from the embarrassment in which he has voluntarily involved himself." To the same effect, generally, see also *Crass v. Mem. & Char. R. R. Co.*, 96 Ala. 447.

In *Gibson v. Goldthwaite*, 7 Ala. 281, *supra*, the court said, that "The settled rule both at law and in equity is, that an agent shall not be allowed to dispute the title of his principal to property, which he has received from, or for his principal; or to say, that he will hold it for the benefit of a stranger. In the cases of adverse independent title, it is said, the true doctrine seems to be, that the party holding the property must defend himself as well as he can at law, and he is not entitled to the assistance of a court of equity; for that would be to assume the right to try merely legal titles, upon a controversy between different parties, where there is no privity

of contract between them and the third person, who calls for an interpleader [2 Story Eq., 124]. In *Crawshay v. Thornton*, 2 Mylne & Craig's Rep. 1 to 23, Lord Cottenham said, that a bill of interpleader, as between principal and agent, was admissible only where the claim was under derivative and not under adverse title."

3. In the case at bar, the Mary Lee Coal & Railway Company, one of the defendants, as we have seen, sued out an attachment at law in the city court of Gadsden against The Etowah Furnace Company, and caused it to be levied on the pig iron in question. The Alabama Great Southern Railroad Company, another defendant, made affidavit and gave bond under the statute, to try the right of property to a porton of the iron so levied upon, and the complainant, the appellant here, at the request of the claimant, became a surety on the claim bond furnished by the railroad company in said claim suit, and the pig iron so levied on and claimed "was left with complainant for safe-keeping and to be delivered to whomsoever the court might adjudge delivery should be made." Afterwards, defendants, Knox & Co., brought suit in detinue against complainant in said city court, for the pig iron left in his hands. In this connection it is averred, that the City National Bank of Chattanooga, Tennessee, claiming the iron left with complainant, threatens to institute suit againt complainant to recover the same ; that subsequent to the levy of the Mary Lee Coal & Railway Company's attachment, the other defendants, The Dora Mining Company, The Queen City Electric Light Company and Fitzgerald & Smith, each, caused attachments to be levied on said pig iron, (the whole lot as is plainly inferable from the averments) subject to the levy made by the Mary Lee Coal & Railway Company. These averments are followed by the statement in the bill, "That orator has and claims no interest whatever in said pig iron, and is simply desirous of relieving himself from all responsibility in regard thereto ; that orator is ready and willing to deliver the said pig iron to whomsoever is lawfully entitled thereto, and hereby submits himself to the jurisdiction of this honorable court, and offers to abide and perform its decrees and orders ; that orator is in danger of loss, growing out of the conflicting claims set up to said pig iron

[Kyle v. Mary Lee Coal & Railway Co. *et al.*]

and the further prosecution of the suits in a court of common law, until the conflicting claims of all parties in interest can be heard and determined.''

From the foregoing it appears, that the complainant voluntarily became the surety of one of the defendants, the Alabama Great Southern Railroad Co., in its claim suit for the iron in question ; that as to said iron, he became the bailee of his principal, the railroad company, for the safe-keeping of said iron ; and it is plainly inferable, though not so averred, the iron was left with him by his bailor for safe-keeping, as a security or indemnity for his liability on said claim bond, so that he might meet his liability on said bond, by a delivery of the iron to the party, in whose favor in the trial of said claim suit, it might be adjudged to belong. He thereby voluntarily assumed the relation of bailee for his principal, the railroad company, and obligated himself by the contract in his bond, to answer to the plaintiff in attachment, the Mary Lee Coal & Railway Company, for the property. It is not pretended, that the claim of the latter company was derivative from his principal, the Alabama Great Southern Railroad Company. He held the property, then, under his bailment, for the benefit of his principal, from whom he received it, and not for the benefit of a stranger. He assumed by his contract to stand for his principal, and make good the obligation of the claim bond, if the suit was decided against the principal, on which bond, in such case, an office judgment may be issued against him within thirty days after judgment against claimant under and by the provisions of section 3013 of the Code of 1886. As to this bond, he stood in the place of his principal for the delivery of the property, and subject to the same liability and remedies. It is difficult to see, therefore, that he had no interest in the suit, and was a mere indifferent stakeholder. Such an attitude cannot be ascribed to him in the litigation, so as to allow him to invoke, as a disinterested stake-holder, the intervention of a court of equity on a bill of interpleader.

4. From what has been said, it appears that the bill filed for interpleader is without equity ; and as it appears it is not amendable so as to give it equity, there was no error in its dismissal in the court below.

The decree of the city court is affirmed.