# CHARLESTON.

## STEPHENSON & COON v. BURDETT, et al.

Submitted June 17, 1904.   Decided October 25, 1904.

1. PLEADING.

Aside from the distinction as to the interest of the plaintiff in the subject matter of the controversy between the defendants, a bill in the nature of a bill of interpleader and a bill of interpleader are governed by the same general principles. (p. 118).

2. VESTED INTEREST—*Interpleader—Equitable Title.*

The relief sought by a plaintiff having such interest, and praying an interpleader, must be a vested equitable interest, for the protection of which there is necessity for the settlement of the contention of the defendants, and not a mere anticipated interest or benefit which may come to him as the result of the desired adjudication between the defendants. The plaintiff cannot require them to litigate with each other for the purpose of determining whether he has an interest, but only for the purpose of enabling him to perfect his equitable title. (p. 118).

3. INTERPLEADER—*Trespasser.*

A bill in the nature of a bill of interpleader cannot be maintained if it discloses that the plaintiff, in the event of the establishment of the claim of one of the defendants, would stand as to him in the attitude of a trespasser. (p. 121).

4. BILL—*Interpleader—Equitable Title.*

Such a bill cannot be maintained if it discloses that the plaintiff has contracted or incurred a personal obligation or liability to one or both of the defendants, respecting the subject matter of their contention, independent of the title or the right to possession. (p. 121).

5. HOSTILE TITLE—*Adverse Possession—Interpleader.*

S. & C. purchased the timber on a certain tract of land, owned by certain persons. B. & J. purchased the timber on an adjoining tract, owned by other persons and held by them under a title hostile and adverse to that of the owners of said first mentioned tract. The line between the two tracts being uncertain as to location and in dispute between the purchasers of the timber as well as between the owners of the land, S. & C. brought a suit in equity to require the land owners to interplead therein, to the end that the location of the line might be ascertained and an adjudication, both as to the owners of the land and the other claimants of the timber in dispute,

might be had, respecting their title to said timber. *Held*, that the bill does not present a proper case for an interpleader. (p. 122).

6.  ADVERSE POSSESSION—*Purchaser—Equitable Title.*

In such case, declarations and conduct, on the part of the purchasers of the timber on one side of such disputed line, in the nature of admissions of, and acquiescence in, the location contended for by the purchasers on the other side, are only matters of evidence of location, bearing upon the question of title to the timber, and will not alone sustain an injunction to prevent the parties from taking timber beyond the location claimed by the other purchasers. (p. 121).

7.  DAMAGES—*Injunction—Insolvency.*

For the wrong and injury of the taking of the timber of another the law provides adequate remedies, and the injury is not irreparable, and injunction does not lie to restrain such act, unless some further fact be shown in connection therewith, such as the insolvency of the wrongdoer. (p. 122).

Appeal from Circuit Court, Kanawha County.

Bill by Stephenson & Coon against J. F. Burdett and others. Decree for plaintiff, and certain defendants appeal.

*Reversed.*

J. W. KENNEDY, for appellant.

LINN, BYRNE & CATO, for appellees.

POFFENBARGER, PRESIDENT:

The plaintiffs in this cause, claiming to be the owners, by purchase, of the timber on certain lands, which they have been cutting and sawing into lumber, are endeavoring to enjoin other persons, who are the owners, by purchase, of timber on adjoining lands, from cutting and taking certain timber, as to the ownership of which there is controversy between them, the right to it depending on the location of the division line between the tracts of land on which the timber purchased by them, respectively, stands. Neither of the contending parties owns any part of the land on which the timber purchased by them is growing. The injunction, therefore, is not intended to be the ordinary restraint of trespass upon land, working irreparable injury, and there is no allegation of insolvency against the defendants; but it is insisted that the jurisdiction may be sus-

tained upon the theory of a right to have an interpleader for the settlement of all conflicting claims among the owners of the land and purchasers of the timber.

Stephenson and Coon, the plaintiffs, purchasers of timber from The Williams Coal Company, The Cabin Creek-Kanawha Coal Company and Thomas L. Broun, co-owners of part of the land, have made these land owners parties to their bill. They have also made J. F. Burdett, George L. Burdett and J. A. Johnson, purchasers of timber from the Williams Coal Company, the Cabin Creek-Kanawha Coal Company, W. Mollohan, J. P. Hale, S. Chapman and the devisees of A. W. Cole, deceased, as well as the last mentioned land owners, defendants to the bill. The relief specifically prayed for is against all the defendants. It is that the Burdetts and Johnson be enjoined from taking or interfering with the timber in controversy and be compelled to account to the plaintiffs for the timber which they had taken from the land before the institution of the suit, or might take before service of process upon them; and that the land owners be required to interplead and establish or relinquish their claims and take the fund paid into court in satisfaction for the timber which the plaintiffs claim the right to take from the land. It is upon this last clause of the prayer that the plaintiffs seem to rest their contention for equity jurisdiction. The controversy between the land owners is a complicated one of long standing. The vendors of the plaintiffs are the only land owners who have answered, and they express their willingness to have the disputed line determined and fixed by the court but do not ask that it be done. From these answers, the whole history of the title to the land and the controversies between the claimants thereto appear. Originally, these lands were a part of a tract of 29,000 acres owned by Augustus Pack and William O'Connor, which they had agreed in February, 1849, to divide. Afterwards, along in the 60's, a coal company instituted a suit in the United States Circuit Court for a division of the tract in accordance with the agreement and a subdivision of the O'Connor moiety among certain vendees of O'Connor and Mary W. Byrne, his sole heir. A survey was ordered and the decree of partition made by which 14,500 acres, one-half of the large tract, was divided among the vendees and the heir of O'Connor. The special commissioner appointed to make conveyances in accord-

ance with the partition omitted a triangular tract of 1,320 acres, but afterwards made a supplemental deed conveying it to Mary W. Byrne. This land was afterwards conveyed by Mrs. Byrne· and her husband to Cole and Chapman in 1873. It seems that the timber on this tract of land is the timber purchased by the·· Burdetts and Johnson and that its west line is the one in dispute. Bordering upon this line is a 5,000 acre tract, part of the original survey, on which is part of the timber purchased by· Stephenson and Coon. It seems that the partition, as between Pack on the one side and the O'Connor claimants on the other,. was never confirmed, because of defect of service of the sum-- mons on Pack. This led to two ejectment suits in the United States Court, one by John Byrne and wife against Pack, and the other by Henry A. Oakley and others against Pack. In 1881, the Williams Coal Company instituted another ejectment· suit against Monroe Eskins and others, involving some or all of these lands. This last suit is still pending in the circuit. court of Kanawha county, although there seems to have been· one or more attempted trials of it. The facts substantially· appear from the bill, but this statement is made from the an-- swers for convenience, as the defendants have stated them more in detail. Whether the line here sought to be ascertained is in question in that action does not clearly appear, but it seems to be. The owners of the 5,000 acre tract of land, affected by this disputed line, the location of which depends upon, or is· affected by, numerous surveys made in the partition suit and the ejectment suits, desiring to have the timber cut and mar- keted, entered into the agreement with Stephenson and Coon,. which provides that the timber may be cut and removed and the proceeds paid into bank to be held·subject to the decision as to the title in said last mentioned ejectment suit. The sale· to the Burdetts and Johnson is a similar contract signed by all the owners of the other tract, some of whom claim interests in both tracts, and the money arising from this sale also is to· be paid into the hands of Geo. E. Price and W. Mollohan, "to· await the result of the said litigation about the title to said land."

As already stated, the vendors of the plaintiffs are the only land owners who have appeared in this suit, and they do not ask that the dispute as to the line be determined here. They only

express their willingness to have it settled here and set out their contentions as to the location of the line. None of the other land owners have so expressed themselves. This bill prays that all of them be required to interplead in this suit and submit to the jurisdiction of the circuit court in this case their controversy as to the location of that line, to the end that the plaintiffs may know what timber they are entitled to take under their contract. They supplement this alleged ground of equity jurisdiction by allegations showing large expenditures of money by way of preparation for the work of cutting and removing the timber purchased by them. They say they have spent thousands of dollars in opening roads and ways and building tramroads, and that they have entered into certain contracts with persons to cut, log and saw the timber, upon which there is liability for damages for delay and failure caused by the interference of the Burdetts and Johnson. They further say that the Burdetts and Johnson are estopped by their conduct from making any claim to the timber beyond the line contended for by the plaintiffs because, though having knowledge of these transactions, they gave no notice of their claim to the timber before these contracts were made and expenses incurred, and also by their having been parties to certain conferences and arrangements made, looking to the ascertainment of the location of the line, and fixing a mode or plan of determining their respective claims.

Upon this bill an injunction was granted, by the judge of the circuit court of Kanawha county, on the 8th day of January, 1902, restraining the Burdetts and Johnson from cutting, removing or in any way interfering with the timber in question. On the 28th day of the same month, the Burdetts and Johnson obtained from the judge of another circuit, upon an answer in the nature of a cross-bill another injunction, restraining the plaintiffs in like manner. A large amount of evidence was taken, and, on February 16th, 1904, the cause coming on to be heard, the court overruled the demurrer of the defendants, Burdetts and Johnson, and also their motion to dissolve the injunction, and authorized the plaintiffs to sell the lumber which had been manufactured from the timber, about 250,000 feet, and pay the proceeds to the general receiver of the court. From these rulings, the Burdetts and Johnson have appealed.

Although the courts, as well as the text writers, have divided interpleader bills into two classes, noting certain distinction* there are certain general principles applicable to all alike. Some are called bills of interpleader and the others'bills in the nature of bills of interpleader; the former being those in which the plaintiff shows that he has no interest in the subject matter of the controversy between the parties whom he desires the court to compel to interplead, but, on the contrary, admits that it belongs to one or the other of them, without being able. to say which, and asks that they be required to settle their dispute so as to relieve him of the vexation of two suits for the same thing and to enable him to safely pay over the money or deliver the property in question. He asks no other relief against either of them, except his costs, a mere incident, and claims no interest in the property. He neither aids nor opposes either of them, and will not be, in any way, affected by the result of their litigation, further than has been indicated, and that is not to the advantage or detriment of either, but it relieves him from an embarassment incident to their controversy. *Hechmer* v. *Gilligan,* 28 W. Va. 750; *Killian* v. *Ebbingham,* 110 U. S. 568; Story's Eq. Pl. § 297, where it is said: "For it is in truth the very foundation of his bill, that he is a mere holder of the stake which is equally contested by the defendants, and that he is wholly indifferent between them." 11 Enc. Pl. & Pr. 455; Barton's Ch. Pr. 209; Hogg's Eq. Pro. 140; Sand's Suit in Eq. § 580 p. 668.

Besides showing his want of interest in the thing to which the defendants claim title or right, the plaintiff must make it appear from his bill that the two defendants claim the same thing from him. It must not only be the same money or property, but they must derive their claims to it from the same source. In other words, they must not claim under titles hostile to one another. Thus, in *Johnson* v. *Atkinson,* 3 Anst. 798, where a tenant attempted to file a bill of interpleader against his landlord and other persons claiming paramount title to the land, to compel them to submit the question as to who is entitled to the rent, it was said: "The things demanded are also different; we cannot anitcipate the decision whether the heir will be bound by his acceptance of a portion of rent. The things actually demanded are different, and therefore not the subject

of an interpleader." So, in *Oil Run Petroleum Co.* v. *Gale,* 6 W. Va. 525, this Court held as follows: "In interpleader in equity, it is necessary that the claimants should claim the same debt or thing." In the case just mentioned, this principle is adhered to, for the court solemnly determined that "the claimants in the bill mentioned in this case, under the statement and allegations of the bill, claim the same rent." In the opinion, HAYMOND, PRESIDENT, guards this point by explaining that one of the defendants founded his claim to the rent upon a decision of the Supreme Court, rendered after the execution of the lease under which the other defendant claimed the rent. The landlord claimd upon the lease. The other defendant claimed by virtue of a subsequent act of the landlord by which the latter lost and the former obtained, virtually by assignment, the rent payable under the contract.

Originally, it was uniformly held by the court that a bill of interpleader could not be sustained except against defendants between whom there exists a privity. Their claims had to be deduced from the same title, and if one claimed under a hostile, distinct and paramount title, they could not be required to interplead for the protection of the plaintiff. 11 Enc. Pl. & Pr. 449. In later years there has been an inclination to relax this rule. *Crane* v. *McDonald,* 118 N. Y. 658. But this tendency is founded largely upon statutory provisions and it cannot be said to be, by any means, general. It amounts to a criticism of the rule rather than a repudiation of it. As to the rule requiring privity, see *Haseltine & Walton* v. *Brickey,* 16 Grat. 116; *Shaw* v. *Coster,* 8 Paige (N. Y.) 339; *Conley* v. *Ins. Co.,* 67 Ala. 472.

Another principle is that a tenant cannot compel his landlord to interplead with another person claiming under a title adverse and hostile to the landlord. This principle is recognzed in *Oil Run Petroleum Co.* v. *Gale,* cited, and the Court was careful to see that it was not violated. *Dungey* v. *Angove,* 2 Ves. Jr. 303, (304), is a leading case on the subject. During the argument, Lord Chancellor Loughborough said· "But in this case how monstrous a thing it would be, if it was in the power of the tenant to make the landlord, at law the defendant in ejectment, disclose his title by an interpleading bill." In delivering the opinion, he said further: "The alarming consequence is, that

if its practice is tolerated, a tenant in possession, whose duty it is to stand by and defend the possession for the landlord, becomes the instrument to betray him, and through the medium of this court to call upon him to do that, which it was the prudence and the justice of the law to prevent; to make a disclosure of his title attacked adversely; and that to be done through the machinations of his own tenant." To the same effect, see *Smith* v. *Target,* 2 Anst. 529. "A tenant may file a bill of interpleader against his landlord and persons who claim rent in privity of contract or tenure with the landlord, as where the conflict is between the latter and one claiming the rent as assignee thereof. But if a stranger claims under title paramount, the suit cannot be maintained against him and the landlord, as there is an absence of privity between them." 11 Ency. Pl. & Pr. 451. "The rule that a tenant cannot compel his landlord to interplead does not prevail, where the claim of the other person arises by the act of the landlord, subsequent to the commencement of the relation of landlord and tenant." *Clarke* v. *Byne,* 13 Ves. 383; *Cowtan* v. *Williams,* 9 Ves. 107.

Another principle to be observed is that such a bill cannot be sustained where it appears that as to either of the defendants, the plaintiff is a wrongdoer. Thus, in *Shaw* v. *Coster,* 8 Paige (N. Y.) 339, where a sheriff, having levied an execution upon property claimed by a third person, attempted to compel the creditor and the claimant of the property to interplead, the court said, that, as to the latter, if his claim of title was valid, the sheriff was a trespasser, and then held that he could not sustain an interpleading suit if he were obliged to admit that, as to either of the defendants, he was a wrongdoer. In the same kind of a case, a like conclusion was reached, and the same principle announced by the supreme court of North Carolina, in *Quinn* v. *Green,* 1 Ired. Eq. 229. A case sometimes cited to the contrary is that of *Storrs* v. *Payne,* 4 Hen. and Munf. 505. That case is not authority. It is a decision of the Superior Court of Chancery in the Richmond District and not a decision of the supreme court of appeals of Virginia. Moreover, it does not decide finally that a bill of interpleader may be sustained under such circumstances. The chancellor refused to grant an injunction upon the bill, but said it might be filed, if the plaintiff chose to do so. Whether it was filed or not does

not appear, and, if it was, it might afterwards have been tested as to its sufficiency upon demurrer. Whether that occurred, nobody knows. The refusal of the injunction was virtually a decision against its sufficiency.

Again, interpleader will not lie, if the plaintiff has incurred some personal obligation to either of the defendants, independent of the title, or the right to possession, because such defendant would, in that event, have a claim against him which could not be settled in a litigation with the other defendant. "The equitable remedy by interpleader will not lie at the instance of one who has an interest in the result of the controversy between the different claimants, but he must stand indifferent between them—in the position of a mere stakeholder—and must not have incurred any independent liability to either of the claimants; and hence a surety on a claim bond in whose possession the property has been left by the principal can not resort to such a remedy, when different claims to the property are presented by several respective claimants." *Kyle* v. *Lee,* 112 Ala. 606. "It is also settled that interpleader will not lie if the complainant has come under some personal obligation to either of the defendants, independent of the title or right to possession, because such defendant would, in that event, have a claim against him, disconnected with the title, which could not possibly be settled in a litigation with the other defendant." *Whitney* v. *Cowan,* 55 Miss. 626, 645. "If a life insurance company has issued a policy on the life of A. payable to B., has allowed A. to surrender the policy without the consent of B., and has issued a new policy to A. payable to C., it cannot, on the death of A., maintain a bill of interpleader against B. and C. to determine its liability. *National Life Ins. Co.* v. *Pingrey,* 141 Mass. 411. In this case, the court said: "A plaintiff cannot have an order that the defendants interplead, when one important question to be tried is, whether, by reason of his own act, he is under liability to each of them."

How far are these general principles deviated from in what is called a bill in the nature of a bill of interpleader? The answer to that question will show whether this bill can be sustained. Under the foregoing principles, it clearly cannot be. If they do not govern bills in the nature of bills of interpleader, it may be that the relief here asked can be had. The only material differ-

ence between the two kinds of bills, pointed out by the courts and the law writers is that, in a bill in the nature of a bill of interpleader, the plaintiff may show that he has an interest in the subject matter of the controversy between the defendants. Sometimes the statement of the nature of this bill is very general and somewhat indefinite. Thus, in Story's Eq. Pl. (10th Ed.) section 297b, it is said: "There are many cases where a bill, in the nature of a bill of interpleader, will lie by a party in interest to ascertain and establish his own rights, where there are other conflicting rights between third persons." Substantially, the same language is used in 11 Enc. Pl. & Pr. 479, and in Sand's Suit in Eq. section 588. There is no suggestion by these authors that there is any further departure from the principles governing a pure bill of interpleader. Must not the defendants claim the same thing from the plaintiff, according to the requirement in a pure bill of interpleader? Must not a relation of privity exist between the defendants? Can a tenant require his landlord to interplead with a third person claiming under a strange and hostile title? If the plaintiff show by his bill that he is in the attitude of a wrongdoer toward one of the defendants, may he require an interpleader? The language of a definition of a bill in the nature of a bill of interpleader, found in the books, does not answer any of these questions in the affirmative, or indicate that the principles governing a pure bill of interpleader are relaxed in any of these particulars. Nor do any of the decided cases countenance such a proposition.

The plaintiff, in a bill in the nature of a bill of interpleader, shows that he has an interest in the property or fund which forms the subject matter of the controversy between the defendants. It must not be an interest which he hopes or expects to acquire as the result of the litigation between them. It must be a subsisting, vested equitable interest. A good illustration of the principles governing such a bill is found in the case of *Mitchell* v. *Hayne*, 2 Sim. & Stu. 63, 1 Eng. Ch. R. 347, holding as follows: "If an action is brought against an auctioneer for a deposit, he cannot file a bill of interpleader, if he insists upon retaining either his commission or the duty." Here the plaintiff set up an interest in himself. If it had been such an interest as might have been properly set up in a bill in the nature of a bill of interpleader, the bill would have been entertained and re-

lief granted him.  But what sort of an interest was it that he claimed?  The bidder had made a deposit with him upon the price bid for the property.  For some reason, the contract between the bidder and the owner of the property was not consummated.  The auctioneer was not, or may not have been, entitled to his commission until the consummation of the sale.  In order to establish an interest in himself, not to protect an interest already acquired and perfected, he sought to bring the owner and bidder into court and compel them to settle their controversy in order that he might acquire his commission.  He attempted to make them litigate their differences, at their own costs, in order to confer upon him a right to a part of the fund.

A case which illustrates the conditions under which a bill of this kind may be sustained is *Parks* v. *Jackson,* 11 Wend. (N. Y.) 442.  A purchaser of land by contract entered upon the same, made improvements, paid the purchase money and obtained a deed.  Before he made the payment and obtained his deed, a chancery suit was commenced against his vendor by a creditor of the grantor of the vendor to avoid his title, as having been fraudulently obtained.  He had no actual notice of the fraud of his vendor until after he had purchased, entered upon and improved the land.  It was held that he might compel his vendor and the creditor to interplead.  As it appeared that the purchaser had already acquired an equity in the land and that the creditor, although proceeding against the title to the land, really sought to obtain satisfaction of his judgment out of the purchase money and was not concerned about, nor interested in, the title claimed by the purchaser, except to revest it in the debtor as a means of obtaining satisfaction of his judgment, the controversy was, in substance, one between the vendor and the creditor over the purchase money, as to which the purchaser made no claim, he having been perfectly willing to pay the purchase money.  He made no claim to the thing really contended for by the defendants, but he did claim an interest in the real estate incidentally involved in that controversy.

A case which goes perhaps a little further is *Darden* v. *Burns,* 6 Ala. 362.  There, a testator had given to his daughter and her heirs a negro woman and provided in his will that, if the daughter should have no lawful heirs, then the woman should revert to his family or estate.  The daughter married and afterwards

died without issue. Soon afterwards the husband died and his administrator sold the negro and her children and grand children, and they were purchased by one Mattison and others, who executed their writings obligatory for the amounts of their respective purchases, payable to the administrator. Then another daughter of the testator set up a claim to these negroes under the will, and the purchasers brought a suit to compel her to interplead with the administrator, and the court entertained the bill. Upon an appeal, the Supreme Court treated it as a bill in the nature of a bill of interpleader. Its character is not discussed to any extent. It seems to have been treated as one presenting merely a contention over the purchase money. In that case, as in the case last above cited, it is to be observed that the relations of privity existed between the defendants, and that the defendants claim the same thing under the same original title, and that the plaintiff and the third party to the transaction both claimed under the same person, mediately or immediately. It is further to be observed that, in neither case, was the plaintiff in the attitude of a wrongdoer or trespasser as to either of the defendants. Neither does it appear that the plaintiff had in either case contracted or incurred an independent and separate obligation or liability to one of the parties which could not be settled in the litigation between them over the matters submitted by the bill.

From the bill in this case, it appears that the plaintiffs have cut some of the timber and are claiming other timber which may be across the line on the lands of persons other than those from whom they have purchased. Whether this timber is beyond the line or not, is the very question they desire to have determined. They claim it under one title, while the Burdetts and Johnson and the persons from whom they purchased claim the same timber under a distinct, adverse and hostile title. There is no shadow of privity between the two classes of defendants to the bill. Moreover, in strictness, the two classes of defendants do not claim the same thing, for the identity of the property is to be determined as well as by the title under which it is claimed as by its physical character, form and location. In one event, it may be the timber of the five thousand acre tract held under the title claimed by Broun and his co-owners. In another event, it would be property held under the Cole and Chapman title. That these titles are adverse, is admitted by the bill and shown

by the allegations thereof. The principles hereinbefore referred to plainly show that for this reason, the bill is not good.

Another defect is its failure to show a vested equitable title to the timber in the plaintiffs. Like the case of *Mitchell* v. *Hayne,* cited, it discloses an effort on the part of the plaintiffs to bring the defendants in to litigate, at their own cost and for the benefit of the plaintiffs, a matter which they may not desire to litigate, in the hope that it will result in establishing the title of the plaintiffs to timber which they have already cut and other timber which they desire to cut, and as to all of which they may not now have any title.

Again, if the claim of the vendors, Burdetts and Johnson, stated in the bill, should be sustained, the plaintiffs will be, as to them, wrongdoers. If the location of the line is as claimed by the Burdetts and Johnson and their vendors, the plaintiffs are trespassers, and the settlement of the boundary line upon this bill would foreclose and determine a question which is wholly foreign to the contract upon which all the rights of the plaintiffs are predicated. See *Shaw* v. *Coster,* 8 Paige (N. Y.) 339; *Quinn* v. *Green,* 1 Ired. Eq. (N. C.) 229.

By this trespass, if there has been one, and, if one theory of the bill should be sustained, there has been one, the plaintiffs have incurred a liability to one set of the defendants with which the other class have nothing whatever to do, and, if the relief asked for by the plaintiffs should be granted, and these two sets of land owners should be brought in and compelled to litigate the question of location of the boundary line, one of the principles governing interpleaders would be plainly violated, namely, that a plaintiff who has incurred an independent liability to one of the defendants cannot compel an interpleader. See *Crawshay* v. *Thornton,* 2 My. & Cr. 1, 14 E. C. 1; *Desborough* v. *Harris,* 5 DeG. M. & G. 437.

So much of the bill as purports to set forth matter of estoppel, seems not to be relied upon by counsel for appellees. Little or nothing is said about it in the brief. For the most part, the facts set up on the theory of estoppel, so far as they relate to the location of the disputed lines are only matters of evidence, in the nature of admissions, and are, therefore, available at law. The whole controversy between Stephenson and Coon on the one side and the Burdetts and Johnson on the other relates to the

title of certain timber which is dependent upon the location of the line. All the acts, conduct and representations, relied upon by way of estoppel, relate to the location of the line. In any action at law by the plaintiff for the recovery of timber or upon their defense to any action for the same timber by the defendants, these facts would be admissible as evidence in determining the location of the line and that would settle the question of title to the timber. Hence, the demand asserted by the bill is purely legal and the facts alleged by way of estoppel amount to mere evidence of title. The law affords an adequate remedy. All their expenditures and contracts are based upon the value of the timber. If they have title to it, and it is in their possession, do they require the aid of a court of equity to maintain their possession and vindicate their title? If the defendants have taken or should take timber belonging to them and withhold possession thereof or convert it to their own use, are there not legal remedies adequate to the vindication of their rights, and the reclamation of their property or its value?

In this State, the mere taking of timber is not regarded as irreparable injury to the owner, entitling him to the benefit of an injunction. Some additional fact must appear by reason of which the remedies provided by law are inadequate to his full and complete protection, such as the insolvency of the trespasser. *Cox* v. *Douglass,* 20 W. Va. 175; *McMillan* v. *Ferrell,* 7 W. Va. 223; *Watson* v. *Ferrell,* 34 W. Va. 406; *Cresap* v. *Kemble,* 26 W. Va. 603.

The demurrer was not interposed until February 16, 1904, when the orders complained of were entered, and long after the answer had been filed. Therefore, it is suggested that it came too late, although, in their answer, the defendants gave notice that they did not waive any insufficiency, defect or imperfection in the bill. This position is untenable. *Bassett's Admr.* v. *Cunningham,* 7 Leigh 402; *Rossett* v. *Greer,* 3 W. Va. 1.

As the bill plainly fails to present any equity in the plaintiffs, the motion to dissolve the injunction and the demurrer should each have been sustained and the bill dismissed. Therefore, the decree complained of will be reversed, both injunctions dissolved and the bill dismissed, and the appellees must pay to the appellants their costs in the circuit court as well as their costs in this Court.                                    *Reversed.*