MARCY K. BROWN ET AL., Appellants v. C. M. CURTIN, Executor, ET AL.—52 S. W. (2d) 387.

Court en Banc, August 5, 1932.

*Marcy K. Brown, Jr.,* for appellants.

*Hugh M. Hiller* and *Wm. Bush* for respondents.

1158

ELLISON, J.—This suit in equity is based on a petition which the plaintiffs denominate a bill in the nature of a bill of interpleader. Its ultimate object is to enjoin the foreclosure of a deed of trust on real estate in Kansas City executed by plaintiffs to secure the payment of their promissory note, pending a judicial determination of the ownership of the note. The trial court granted a temporary injunction, which, upon motion of the defendants and after hearing evidence, was dissolved. The court refusing to revoke the order dissolving the injunction, the plaintiffs have appealed. The case has not yet been finally determined below on its merits.

The note was for $13,000, due March 27, 1930, bearing interest at seven per cent per annum payable semi-annually. The deed of trust provided that upon default in the payment of interest and taxes when due and on the failure to keep the property insured, the legal

holders of the note might declare the whole debt due and payable and direct the trustee nominated in the deed of trust to foreclose pursuant to the power of sale therein contained. In the fall of 1929 the appellants were in arrears on certain interest payments and taxes, and had failed to keep up the insurance. The respondent holders of the note, being certain heirs and legatees of Timothy Curtin, deceased, thereupon directed the trustee to advertise the property for foreclosure sale, which was done, the sale being set for December 11, 1929. Two days before the sale, on December 9, 1929, the appellants brought this suit, making said heirs and legatees of Timothy Curtin, deceased, and the trustee in the deed of trust, parties defendant. The petition pleads in two counts why the sale should be enjoined.

The first count charges the Curtin heirs and legatees had contracted with the appellants that if the latter would make certain improvements upon the real estate, as they did do, the interest need not be paid until maturity and no foreclosure would be resorted to before that time. This count significantly goes on to say "a great temporary financial stress now exists and for sometime has existed in Kansas City and in the entire country" by reason of which loans upon real estate are unobtainable and the contemplated foreclosure sale would be made at a great loss and sacrifice; but that said financial condition "is now just beginning to disappear" (this was in December, 1929) and will entirely disappear by the time of the regular maturity of the note (in March, 1930) so that appellants can then refund the loan without loss to themselves or the defendants.

The second count is the one chiefly involved on this appeal. It is very long, and denies the Curtins are the legal owners of the note. Condensed the facts stated are as follows. The loan was negotiated by the J. R. Allen Mortgage Company in 1925 and Timothy Curtin got it from that company. It is alleged that at the time of the execution of the loan in 1925 the mortgage company was failing financially and about three years later, on February 29, 1928, was adjudged a bankrupt; that its cash assets inventoried only $1.01 and the proven claims against the bankrupt aggregated over $86,000; that only slightly more than fourteen per cent had been paid on these claims when the bankruptcy proceeding was closed and the trustee discharged in August, 1929.

It is then charged on information and belief that in 1925 and prior thereto, Timothy Curtin and the J. R. Allen Mortgage Company had an agreement of joint adventure whereby they were to procure, make and hold real estate loans in the name of the mortgage company, contributing equally in money and sharing equally in the profits and losses; that the loan made to appellants and transferred to Curtin was one of these loans; that by reason of said facts Curtin became

1160

jointly liable with the J. R. Allen Mortgage Company for the payment of its debts and the note and deed of trust in litigation, as property of the joint adventurers, should have been listed as an asset of the bankrupt estate of the J. R. Allen Mortgage Company and applied to the payment of the proven claims of its creditors; that the transfer of the note to Curtin, in these circumstances, was a fraud upon the creditors of the mortgage company and was made as part of a conspiracy between Curtin and the Mortgage Company to conceal the assets of the latter, to prefer the former over other creditors, and to cloud the title of the real estate owned by appellants and covered by the deed of trust.

It is further alleged the creditors of the J. R. Allen Mortgage Company threaten, intend to and will enforce their claims against the note and mortgaged real estate, and the appellants therefore pray that the transfer of the note to Curtin be set aside and the true ownership thereof ascertained. The paragraph concludes with the assertion that by reason of the facts pleaded the respondent Curtin heirs and legatees were not the legal owners of the note when the foreclosure proceeding was started and had no legal right to direct the trustee to advertise and sell under the deed of trust in consequence of which the sale would be void, and appellants cannot protect themselves by buying in the property thereat.

Still another paragraph is added to the petition, stating that under the Federal statutes the State court had power to "make as a party herein one of the proved unsatisfied creditors of said bankrupt estate of said J. R. Allen Mortgage Company" to act in his own behalf and in behalf of other similar creditors; and to make application for the reopening of the bankrupt estate and the appointment of a new trustee; and that thereafter, with said trustee and the other interested persons as parties, the ownership of the note can be ascertained and proper disposition thereof made.

The petition then alleges that unfavorable publicity attending the failure of the J. R. Allen Mortgage Company would cast doubt on the validity of any foreclosure sale and chill the bidding. It is further asserted the respondent Curtins are nonresidents and not financially responsible; and that if appellants should pay them, they (appellants) could not get back their money For this and the other reasons mentioned, a temporary restraining order and injunction were prayed to restrain the contemplated sale on December 11, 1929, and any other sale until the title to the note should be settled; and it was further prayed that the court cause to be made a party to the action a new trustee in bankruptcy to represent the unsatisfied creditors of the J. R. Allen Mortgage Company. There was also a prayer for general relief.

Upon the filing of the petition in the assignment division of the Jackson County Circuit Court, Division 3, a temporary restraining order was made, as prayed, and the defendants gave bond in the sum of $400. Later, on December 23, a temporary injunction was issued and appellants gave a $1,000 injunction bond. At the next term the cause was assigned to Division 3 by stipulation. The trustee in the deed of trust filed answer, a general denial, and in May, 1930, one E. K. Hunter, describing himself as "one of the legally proven creditors of J. R. Allen Mortgage Co.," filed a petition for leave to intervene, through his attorney, H. S. Julian, in which he alleged the failure and bankruptcy of the mortgage company with the results claimed in appellants' petition, as hereinabove set out. This intervening petition then charges a joint adventure between Timothy Curtin and the J. R. Allen Mortgage Company and that the note in suit legally constituted an asset of the bankrupt mortgage company. The whole pleading is substantially a repetition of the second count of the appellants' petition.

The court refused to permit the intervention, but continued the cause for ten days in order that the intervening petitioner might have opportunity to apply to the Federal Court for an order reopening the bankruptcy administration on the estate of .the J. R. Allen Mortgage Company. Thereupon the defendant trustee in the deed of trust took a change of venue and the cause was transferred to Division 6.

In July, 1930, the respondent Curtin heirs and legatees filed an amended answer accompanied by affidavits specifically denying the allegations of both counts of the petition—with respect to the asserted contract to forego prompt payment of interest and delay foreclosure, and concerning the joint adventure charged. The answer affirmatively alleged the appellants were in default on the interest coupons due in March and September, 1929, in the payment of taxes for the years 1927, 1928 and 1929, and had failed to keep the property insured as required by the deed of trust; and that the principal note had matured in March, 1930, after the institution of the litigation. It was further affirmatively alleged that *the respondent Curtins were the legal owners and holders of the note* when the property was advertised for foreclosure sale and when the suit was started; and that they requested and directed the trustee to foreclose. This allegation and the issue of fact raised thereby are regarded by appellants as of paramount importance, as will be explained later.

On September 3, 1930, the respondent Curtins filed a motion to dissolve the temporary injunction, based on the verified denials in their answer and the affidavits filed therewith; and again affirmatively alleging they were the legal owners and holders of the note, and that the appellants were in default and subject to foreclosure.

The motion reiterated the denial that they had ever agreed to postpone foreclosure.

The appellants filed a verified answer to this motion on September 11, averring the controlling issue to be decided in the case was the ownership of the note, which could not be done without the intervention of a third party, to-wit, a trustee in bankruptcy of the estate of the J. R. Allen Mortgage Company to represent the creditors of said bankrupt; that such trustee could only be appointed in the Federal Court; that the creditor E. K. Hunter who had unsuccessfully attempted to intervene in the cause while pending in Division 3, had, in accordance with the ruling of that Division, filed a formal application in the Federal Court for the reopening of said bankrupt estate and was vigorously pressing same to the end that a new trustee in bankruptcy might be appointed and intervene in the State court; that respondents were hindering and obstructing said proceeding in the Federal Court, with a view to preventing the creditors of the mortgage company from having their day in court. The creditor E. K. Hunter also appeared and offered to file the petition for intervention which, as we have stated, had been rejected in Division 3. The court overruled his application.

On September. 17, the cause was submitted to the court on the respondents' motion to dissolve the temporary injunction and the appellants' answer thereto. Evidence was heard and the matter taken under advisement until September 24 when the court entered a written order and judgment dissolving the injunction in which the finding appears that the respondents are the legal owners and holders of the note. The appellants filed motions for new trial and to modify the judgment dissolving the injunction, both of which were overruled. They then took an appeal to this court, and both before and after doing so filed motions in the circuit court to continue the injunction in force pending the appeal. Both these motions were overruled.

At the hearing on the motion to dissolve the injunction the appellants appeared by the appellant Marcy K. Brown, an attorney at law, and by Mr. H. S. Julian, who was also attorney for the aforesaid creditor E. K. Hunter. The evidence introduced was as follows. The respondents produced the books and records of the J. R. Allen Mortgage Company showing its transactions with Timothy Curtin touching various real estate loans including the one in suit. It was shown by these records and by cancelled checks, stamped "paid" at the bank on which they were drawn, that Timothy Curtin bought a McGuire loan for $2,000 on March 16, 1925, from the J. R. Allen Mortgage Company; that on April 6, 1925, the company repurchased this loan from him for $2,012.84 (principal plus earned interest) and gave him credit for that amount on its books; that on March 21, 1925, a Phillips loan owned by Curtin matured and was paid off,

the company giving him credit on its books for the amount thereof, in the sum of $2,506.89; that on March 24, a DeShazer loan owned by Curtin matured and was paid off, the company giving him credit on its books for the amount thereof, in the sum of $8,776.25, these various credits totalling $13,303.53. On April 6, 1925, Curtin purchased from the mortgage company the Brown loan involved in this suit for $13,000, and the company gave him a check for $303.53 to balance his account. This check, together with the checks given in settlement for the Phillips loan and the DeShazer loan were all introduced in evidence. They had memoranda on the back showing for what they were given.

J. R. Allen, president of the defunct mortgage company testified the company never sold loans to Curtin at a discount or split commissions with him, but that he paid the face value of all loans and did so in buying appellants' note. Probate records were introduced to show respondents' title to the note through Timothy Curtin, deceased. It was shown by one of the Curtin heirs in person, and by affidavit of the others, that they severally had never made any agreement with the appellants whereby foreclosure of the deed of trust was to be withheld. Default in the payment of interest, taxes and insurance premiums was proven, and by the affidavit of a realtor the actual value of the property was fixed at $11,500, which was $1,500 less than the face of the note.

For appellants the affidavit of the appellant Marcy K. Brown was introduced wherein it was recited the affiant *was informed and believed* and therefore charged that more than $46,000 in real estate loans found among the property and effects of Timothy Curtin after his death had come to him during and as a part of an alleged joint adventure with the J. R. Allen Mortgage Company—; and *on information and belief* the affiant further charged these loans were transferred to Curtin for the purpose of preferring him as a creditor and concealing his liability as a joint adventurer. By affidavit the appellants further affirmed the respondents had agreed to forestall foreclosure for non-payment of interest on the note in suit until maturity thereof in consideration of expenditures to be placed on the property, which expenditures to an amount exceeding $400 were made.

Two "mourners" of the J. R. Allen Mortgage Company were introduced who testified it had conducted its business fraudulently with them. One of these witnesses said an officer of the company admitted to him its business had been "crooked" from the beginning. They did not know anything about the Brown note or the alleged joint adventure with Curtin. By a deputy clerk in the city treasurer's office it was proven that between 1924 and 1927 the highest amount of personal property declared by Timothy Curtin under oath for taxation was $510. A public accountant testified he had audited

the books of the J. R. Allen Mortgage Company and that the company had been insolvent since 1923. On cross-examination he said he found nothing to show Timothy Curtin had got any of the assets of the company. A deputy county clerk testified the highest amount of personal property declared by Timothy Curtin for state and county taxation between 1924 and 1927 was $620. This witness said Curtin was a railroad conductor and that some other conductor received a salary of $175 per month. It was further shown Curtin's bank account in the Fidelity National Bank and Trust Company between 1922 and 1926 never showed deposits or checks in excess of $400 except one item of $800. Appellants' abstract so quotes the evidence as to show counsel for respondents conceded this was the only bank in which Timothy Curtin carried an account. Respondents strenuously deny making the admission and have brought up an additional abstract showing this and other parts of the record in full, questions and answers. We take their view of the matter.

After the appeal was lodged in this court, appellants filed a motion for an order continuing in force the injunction issued by the Jackson County Circuit Court. The motion was sustained and appellants were required to give an additional bond for $2,000. This was in October, 1930. In April, 1931, respondents filed a motion here to dissolve the injunction, showing by exhibits that the United States District Court, on a hearing before a special master, had refused to reopen the estate of the J. R. Allen Mortgage Company in bankruptcy. Appellants opposed this motion showing an appeal had been taken from the order of the United State District Court to the United States Circuit Court of Appeals. On this showing the motion to dissolve the injunction was overruled. There is nothing in the record disclosing what action has been taken by the Circuit Court of Appeals.

■ I. Both appellants and respondents have briefed this case as if the main question in it is whether the second count of appellants' petition is a bill in the nature of a bill of interpleader. Appellants insist it is and say an interpleader proceeding involves two separate, successive and independent litigations: (1) a contest between the plaintiff on the one hand, and all the defendants on the other, as to whether the plaintiff may maintain his bill and implead the defendants against each other; (2) and if that be allowed, a further contest between the contending defendants alone to adjudicate their several antagonistic claims to the fund or property involved. That, we agree, generally is good law in interpleader cases, Matlack v. Kline, 280 Mo. 139, 156, 216 S. W. 323, 327; Roselle v. Farmer's Bank of Norborne, 119 Mo. 84, 92, 24 S. W. 744, 746. Whether it governs this case is another question. Appellants apply it in this way. They

point out that the determinative issue on which the injunction was dissolved below—the issue to which all the evidence was directed—was whether the respondents owned the note. This question, appellants assert, belonged to the "second litigation," and was not open to consideration until the trial court had first decided whether they could maintain their interplea; and so they argue the judgment dissolving the injunction was premature and void. [See, Roselle v. Farmer's Bank of Norborne, 119 Mo. l. c. 93, 24 S. W. l. c. 746.] Our conclusion is that appellants' contention cannot be sustained—for reasons to be stated.

In the first place, appellants' petition is not a bill in the nature of a bill of interpleader. One of the four requisites of a bill of interpleader is that "the person asking the relief—the plaintiff— must not have nor claim any interest in the subject-matter;" and with reference to the contesting claimants "he must stand perfectly indifferent between them, in the position merely of a stakeholder." [4 Pomeroy's Eq. Juris (4 Ed.) sec. 1322, p. 3172, sec. 1464, p. 3461; Granite Bituminous Paving Co. v. Stange (Mo. App.), 37 S. W. (2d) 469, 471.] The petition must contain allegations showing the existence of these requisites, 4 Pomeroy, Id., sec. 1328, p. 3184, sec. 1479, p. 3487; and "if the plaintiff expressly denies his liability in whole or in part to one of the defendants, he strikes at the very foundation of the remedy, and shows that he is not indifferent," 4 Pomeroy, Id., sec. 1470, p. 3473. Similarly, this court said in Pope v. Mo. Pac. Ry. Co., 175 S. W. 955, 957, "It is settled law that if, in such a proceeding, the amount due is in dispute between plaintiff and defendant(s) or either of them, the bill cannot be maintained."

It is obvious that appellants' bill in this case offends against the foregoing rule throughout. It charges that Timothy Curtin and the J. R. Allen Mortgage Company had embarked on a joint adventure, contributing equally in money and sharing equally in profits and losses; that Curtin thereby became liable for the mortgage company's debts; that the note in suit was negotiated by the mortgage company as a part of that joint adventure, and legally should have been included with its assets in bankruptcy and applied to the payment of the proven claims of its creditors; that the transfer of the note to Curtin was fraudulent and conspirant, and made for the purpose of concealing the assets of the mortgage company, preferring Timothy Curtin as a creditor, and clouding appellants' title to their real estate; that the respondent heirs and legatees of Curtin are not the legal owners of the note or entitled to payment thereof, and had no right to direct the trustee in the deed of trust to foreclose; that a sale pursuant to that direction would be void, and appellants would be unable to recover back from the respondents any money

1166

obtained by the latter through such a sale because they are nonresidents of the State and financially irresponsible; and one of the prayers in the bill is that the transfer of the note to Timothy Curtin be set aside.

■ Appellants argue, however, that the doctrine requiring the plaintiff to be disinterested and indifferent as between the defendants, applies only to strict bills of interpleader; that it does not govern in equity proceedings based on bills *in the nature* of bills of interpleader; and that their petition is, therefore, none the less a bill in the nature of a bill of interpleader for want of impartiality, and because of its allegations that the respondent Curtins do not own the note and deed of trust.

The rule, or rather the exception, which appellants thus seek to invoke is said to be as follows. In 33 Corpus Juris 6, page 423, the statement is: "A bill in the nature of a bill of interpleader is distinguished from a bill of interpleader proper in that there are grounds of equitable jurisdiction other than the mere right to compel defendants to interplead, and complainant may seek some affirmative equitable relief. A bill in the nature of a bill of interpleader will lie by a party in interest, to ascertain and establish his own rights, where there are other conflicting rights between third persons." 15 Ruling Case Law, section 16, page 233, says: "The only material difference between a pure bill of interpleader and a bill in the nature of a bill of interpleader is that in the latter the plaintiff may show that he has an interest in the subject-matter of the controversy between the defendants." As laid down in 4 Pomeroy Equity Jurisprudence (4 Ed.), section 1481, page 3492, the law is: "A bill in the nature of a bill of interpleader is one in which the complainant seeks some relief of an equitable nature concerning the fund or other subject-matter in dispute, in addition to the interpleader of conflicting claimants. The complainant is not required, as in strict interpleader, to be an indifferent stakeholder, without interest in the subject-matter. . . . the additional relief most frequently granted is the redemption of a mortgage or other encumbrance on property, when there are conflicting claimants to the debt secured." [See, also, Story's Equity Pleading (10 Ed.) sec. 297 b, p. 293; 1 Whitehouse Equity Practice, sec. 128, p. 244; Maclennan on Interpleader, p. 338; Matlack v. Kline, 280 Mo. 139, 155, 216 S. W. 323, 327, 190 S. W. 408, 411; Stephenson v. Burdett, 56 W. Va. 109, 48 S. E. 846, 10 L. R. A. (N. S.) 748.]

But running through all the above definitions is the thought that a bill in the nature of a bill of interpleader merely permits the trial of independent equitable issues *in addition* to the interpleader—it does not dispense with the interplea. The plaintiff may ask for other equitable relief against the defendants, but if his petition fails to

show colorable claims made by contesting defendants it does not make out a case of interpleader, and is not a bill in the nature of a bill of interpleader, though it may be good as some other kind of bill in equity. [Finn v. Mo. State Life Ins. Co. (Ala.), 132 So. 632, 634.] Thus, in 33 Corpus Juris, section 6, page 423, it is said, following the excerpt already quoted: "The bill cannot be maintained where plaintiff alleges that neither of defendants has any right or title to, or any interest in, the subject-matter of the action." Supporting this text three cases are cited, one of which is Crass v. Memphis & C. Railroad Co., 98 Ala. 447, 452, 11 So. 480.

This Crass case goes further than the text of Corpus Juris, and we think correctly so. It holds, as we understand the opinion, that when a bill alleges *either* of the two defendants has no right or title to the subject-matter of the suit, it is not good as a bill in the nature of a bill of interpleader, saying: "When, from complainant's own showing, there can be no doubt in the case, the party entitled to the debt or duty claimed is not to be subjected to the delay and expense of a chancery suit." Speaking of the petition there under consideration, the case goes on to say: "Every fact necessary to constitute a valid levy is negatived by the averments of the bill" (the asserted rights of one contesting defendant were based on an attachment levy); and then observes that if both defendants had filed answer admitting all the allegations of the bill, a plain case would have been made out in favor of the other defendant. So in the instant cause, if the allegations of the second count of appellants' petition were admitted it would necessarily follow that the respondent Curtins have no title to the note and deed of trust; both instruments would belong solely to the creditors of the J. R. Allen Mortgage Company through their legal representative, a trustee in bankruptcy; and there would be no reason for an interpleader.

Another reason why the appellants' petition cannot be classed as a bill in the nature of a bill of interpleader is that it is a straight suit against the respondent Curtins only (though, of course, the trustee in the deed of trust is included as a more or less formal defendant). The bill does not join any of the creditors of the J. R. Allen Mortgage Company as defendants. Boiled down, it simply charges the respondent Curtins are not the owners of the note and deed of trust and that the title thereto rightfully is in third persons who are not made parties. It may be true enough that appellants could not join any of the creditors of the defunct J. R. Allen Mortgage Company as defendants because they had no direct title in their own right; and could not implead the trustee in bankruptcy since there was none—the former trustee having been finally discharged. But these facts did not make the petition a bill in the nature of a bill of interpleader. As is said in 33 Corpus Juris, section 10, page 427,

"Interpleader cannot be maintained unless it is shown that claimant sought to be brought in is in existence and capable of interpleading." [See, also, Northwestern Mut. L. Ins. Co. v. Kidder, 162 Ind. 380, 70 N. E. 489, 66 L. R. A. 89, 94, 1 Ann. Cas. 509, 512; Mo. State Life Ins. Co. v. Robertson Banking Co. (Ala.), 134 So. 800, 802.]

For the reasons stated above we think appellants' petition is not good as a bill in the nature of a bill of interpleader. But even if it were, the rule appellants seek to invoke here would not be available to them. Their theory is that the respondents were premature in tendering an issue as to the ownership of the note and deed of trust when moving for a dissolution of the injunction. But what else could respondents do when that was the gravamen of the charge in the petition? How could they wait until appellants had been allowed to interplead and withdraw from the case, or stand aside, when there was no other adversary to confront? While the law is that an ordinary interpleader proceeding involves two separate litigations, yet, if the plaintiff takes the burden of alleging one of the two defendants has no title, and thus injects himself into the second litigation, so-called, and especially where there is no one else to press that charge and the plaintiff does so—it is hard to see how the plaintiff can complain that the defendant was premature in meeting the issue at the first opportunity.

█ Respondents urge the petition is not a bill in the nature of a bill of interpleader for two additional reasons: (1) because there was no affidavit of non-collusion; (2) because the appellants failed to tender into court the amount due on their mortgage note and do not offer to do so in their petition. As to the first of these objections it seems to be the rule that an affidavit of non-collusion is not required with a bill in the nature of a bill of interpleader. [33 C. J. sec. 42, p. 456; Maclennan on Interpleader, p. 339; 1 Whitehouse, Equity Practice, sec. 128, p. 245.] Were it otherwise, the omission has been waived by respondents in this instance by answering over, 15 Ruling Case Law, section 13, page 231.

█ The second objection is good—in part. Appellants admit they owe the note; the amount due thereon is not in dispute; and there is no denial that appellants are in default. The second count of the petition does not charge the respondents contracted to postpone foreclosure, as does the first count; and there is no contention anywhere in the record that the creditors of the J. R. Allen Mortgage Company ever made such a promise. If the petition is to be treated as a bill in the nature of a bill of interpleader it amounts simply to a plea that appellants cannot safely pay the note because of uncertainty as to the ownership thereof. In these circumstances it is very generally held the plaintiff must pay the fund into court,

or offer to do so in his bill, especially when asking an injunction to restrain foreclosure. Some cases say an omission of such tender makes the bill demurrable; others merely that no injunction can be granted in the absence thereof. [Murphy v. Barron, 286 Mo. 390, 407-8, 228 S. W. 492, 497; 4 Pomeroy Eq. Juris. (4 Ed.) sec. 1480, p. 3490; 1 Whitehouse, Eq. Prac., sec. 126, p. 239; Story's Eq. Plead. (10 Ed.) sec. 297 b, pp. 293, 294; 15 R. C. L. sec. 12, p. 230; 33 C. J. sec. 33, p. 450, sec. 39, p. 455.] The same rule applies to the other kinds of suits to enjoin foreclosure. [Holmes v. Webb City B. & L. Assn., 189 Mo. App. 95, 102, 174 S. W. 122, 124.]

But the failure can be waived by going to trial on the merits of the interpleader without objection, Murphy v. Barron, supra. In this case no such objection was made in the trial court, and the respondents did file answer. There has, however, been no trial on the merits. Respondents filed a motion to dissolve the temporary injunction as they had a right to do, under Section 1514, Revised Statutes 1929, and the motion was sustained. The trial court refusing to revoke the order dissolving the injunction the appellants appealed, as the statute permits, Sections 1018, Revised Statutes 1929, and thus the cause was brought to this court. But the order dissolving the injunction was purely interlocutory. It expressly recites it is based on the motion to dissolve; part of the evidence introduced by both sides at the hearing thereon was in the form of affidavits, as is specially allowed in proceedings of that character, Section 1516, Revised Statutes 1929; and a hearing on the main case was not consolidated with or made a part of the hearing on the motion. In these circumstances the judgment dissolving the injunction was, as has been stated, interlocutory, notwithstanding it is founded on evidence bearing on the merits of the main case. It merely determined the temporary injunction should not have been issued; does not operate on the merits, and simply leaves the cause standing as if no injunction had been granted. [32 C. J. sec. 600, p. 359, sec. 735, p. 429; State ex rel. Manning v. Smith, 188 Mo. 167, 180, 86 S. W. 867, 870; Albers Com. Co. v. Spencer, 245 Mo. 368, 375, 150 S. W. 712, 713; Joplin Gas Co. v. Joplin, 182 Mo. App. 422, 432, 167 S. W. 660, 662.]

The foregoing facts present this situation. The respondents thus far have made no objection in the trial court to appellants' failure to tender the amount due on the mortgage note. We cannot, therefore, consider the point on this appeal—although respondents are not foreclosed from raising it after the case is remanded for a trial on the merits—except to say appellants' failure to pay into court the amount due on the mortgage note, or to offer to do so in their bill, as an aid to construction confirms the conclusion reached earlier in this opinion that the pleading is not a bill in the nature of a bill of interpleader.

II. Appellants next contend that even if their petition is not a bill in the nature of a bill of interpleader, and if the suit be treated simply as one to redeem their real estate from the lien of the deed of trust or to prevent the putting of a cloud on their title (under Sec. 1519, R. S. 1929) still the action of the trial court in dissolving the temporary injunction was erroneous and against the weight of the evidence. On this theory appellants are committed to the affirmative of the issue whether Timothy Curtin fraudulently acquired the note. They have pointed out in great detail, and with a copious citation of authorities, certain facts which they say appear in the record, constituting fraud or badges of fraud. These, put in three groups, are: (1) that the J. R. Allen Mortgage Company was insolvent and Curtin did not have sufficient funds to buy the note in 1925 when it was transferred to him; (2) that the interest coupon notes attached to the principal note were expressed to be payable to the J. R. Allen Mortgage Company or bearer but were not endorsed by it, and yet nevertheless were shown to have been collected by said company, thereby establishing both the principal and interest notes never left the possession of the mortgage company and making the attempted transfer to Curtin void under Section 3123, Revised Statutes 1929; (3) that Curtin swore in his returns for tax assessments he only owned a small amount of personal property— so small as to preclude his owning the note.

We shall dispose of these questions as briefly as possible. As to the first, there is subtantial evidence that the J. R. Allen Mortgage Company was insolvent and had defrauded other investors when and after the note and deed of trust in suit were transferred to Timothy Curtin in 1925, but there is no evidence Curtin knew it or that he paid less than the face of the note in purchasing it. The positive documentary evidence is to the contrary. As to Curtin's financial situation, there was evidence that he was a railroad passenger conductor, and that some other conductor working for the same railroad received $175 per month salary two or three years before the trial. There was also proof that Curtin's account in one particular bank in 1925 and thereafter showed no deposits or withdrawals exceeding $400 except one of $800. These are the only facts developed save the evidence that Curtin did not give any real estate notes in his tax returns, which will be referred to later.

Considered from the viewpoint of its ultimate and substantive effect as proof appellants' showing on this issue was practically valueless. There was no evidence that Curtin did not have money in banks other than the one above mentioned; there was nothing to show he did not own the notes out of the proceeds of which he bought the note in suit; and absolutely nothing indicating the $46,500 in real estate notes found among his effects after his death did not belong

to him. Appellant Marcy K. Brown filed an affidavit when the suit was instituted declaring he was *informed and believed* and so charged all the foregoing notes (which included the note in suit) came to Curtin through a joint adventure with the J. R. Allen Mortgage Company and that they were transferred to him fraudulently. This affidavit was made competent by Section 1516, Revised Statutes 1929, but the statute does not and could not make its recitals conclusive. [O'Donnell v. Wells, 323 Mo. 1170, 1178, 21 S. W. (2d) 762, 766.] They were the vaguest hearsay. Their weight was a question for the court to determine. Affidavits have been characterized as the "most miserable species of evidence." [Moore on Facts, sec. 938, p. 1094.] At the hearing on the motion to dissolve the injunction the appellant Marcy K. Brown was present and took part in the proceedings; but he contented himself with introducing his said affidavit without taking the stand. We think the trial court was abundantly justified in ruling as it did.

There is nothing in the point that the sale of the note to Curtin was fraudulent and void under Section 3123, Revised Statutes 1929. This statute, speaking broadly, provides a sale of goods and chattels must be accompanied by a delivery of possession. Conceding without deciding it applies to negotiable instruments, the facts of this case do not come within it. Appellants' contention to the contrary is based on this flimsy foundation. The coupon notes attached to the principal note designated the J. R. Allen Mortgage Company or bearer as payee, but they were not indorsed by that company and appellants paid the interest to it until they defaulted. Appellants argue this shows the mortgage company retained possession of the main note and coupons and did not deliver them to Curtin. But that does not follow even as a probability. The J. R. Allen Mortgage Company negotiated the loan, the principal note was indorsed by it and all the notes were payable at its office. The usual and natural course would have been for it to receive the interest payments from time to time and remit them to the then owner of the loan on surrender of the proper coupons. As a matter of fact the evidence shows the company did pay them to Curtin, and the note was found in his safety deposit box after his death. The contention is, furthermore, directly contradictory of appellants' main charge that the note was transferred to Curtin to conceal the mortgage company's assets and prefer Curtin as a creditor.

Finally, the fact that Curtin failed to give in the note and his other real estate notes for taxation is urged as a reason why the judgment should be reversed. Appellants refer to Glenn v. Glenn, 17 Iowa, 498, 502, cited in 27 Corpus Juris, section 155, page 46, as an authority holding the failure to return property for taxation may be a badge of fraud. The case does mention a circumstance of that

kind in connection with other facts. But it would be going to unjustified lengths to hold in this case that Timothy Curtin's failure to declare appellants' note to the tax assessor was any evidence he had entered into a joint adventure or was otherwise acting in fraudulent collusion with the mortgage company from whom he bought it, paying full value as the record shows. His silence is quite as consistent with the theory that he sought to avoid taxation. He did the same thing with another $10,000 note obtained elsewhere. The contention is overruled.

We find no error calling for a reversal of the case. The judgment of the trial court dissolving the temporary injunction is affirmed. The order of this court continuing the temporary injunction in force is set aside, and the cause is remanded for further proceedings. If, during the pendency of this appeal, a trustee of the estate of the J. R. Allen Mortgage Company in bankruptcy has been appointed, the trial court will doubtless allow him to intervene if the pleadings and facts warrant. All concur.