STATE OF MISSOURI at the Relation of THE CITY OF ST. CHARLES,
a Municipal Corporation, Relator, v. WILLIAM DEE BECKER,
EDWARD J. McCULLEN and JEFFERSON D. HOSTETTER, Judges
of The St. Louis Court of Appeals.—83 S. W. (2d) 583.

Court en Banc, June 5, 1935.

*William F. Achelpohl, Jesse H. Schaper* and *Randolph H. Schaper*
for relator.

*B. H. Dyer, R. B. Elster* and *Homer Hall* for respondents.

FRANK, C. J.—This case, recently came to the writer on reassignment. It is certiorari to the St. Louis Court of Appeals to quash an opinion of that court in the case of the City of St. Charles, Missouri, Appellant, v. Wabash Railway Company, a Corporation, The Liberty Central Trust Company of St. Louis, Missouri, a Corporation, and National City Bank of St. Louis, a Corporation, Respondents, 65 S. W. (2d) 655. For brevity we will refer to appellant in that cause as the city, and to the respondents as the railway, the trust company, and the bank.

The cause is labeled as an interpleader action. We will state from the opinion of the Court of Appeals facts sufficient to determine the alleged conflict with controlling decisions of this court, and refer the reader to 65 S. W. (2d) 655, where the opinion is reported, for a detailed statement of the facts.

It appears that in February, 1921, the city contracted with Success Products Oil Company for the purchase of a quantity of road oil. The oil company agreed to pay the freight on the oil from the point of shipment in Oklahoma to the city of St. Charles. The city agreed to pay for the oil on or before January 20, 1922. Pursuant to the contract of purchase ten carloads of oil were shipped to and accepted by the city. The bill of lading for each of these cars recited, "Consigned to order of Success Oil Products Company, Destination St. Charles, Mo." It further appears that the oil company sent the bills of lading to the railway with instructions to deliver the oil to the city without the bills of lading, and stating that the bill for the freight was being sent to the oil company's office for payment. Pursuant to such instructions, the railway delivered the oil to the city. For value received, the oil company assigned the invoices for nine of the carloads of oil to respondent, trust company, and one to the respondent, bank. The city knew of and recognized the assignments of the invoices as above stated. On presentation of the invoices by the trust company, the city paid the trust company in full for the first seven carloads of oil. Before paying for the remaining three cars, the city discovered that the oil company had not paid the freight on these three cars as it had agreed to do when the oil was purchased. The invoices of two of these three cars were held by respondent, trust company, and the invoice to the remaining car was held by respondent, bank. When the bank and the trust company demanded payment for these last three cars of oil, the city paid the trust company the amount of the invoices which it held for the two cars, less the sum of $413.55 which it with-

held to cover the unpaid freight charges on the two cars, and paid the bank the invoice which it held for the last car, less the sum of $205.12 retained to cover unpaid freight charges. The railway was demanding that the city pay the freight charges on these three cars of oil, and the trust company and the bank were demanding that the city pay them the $618.67 which it had withheld from the purchase price of the three cars of oil until the freight charges were adjusted.

In face of these conflicting claims the city filed in the Circuit Court of St. Charles County what it denominates a bill of interpleader, against the railway, the trust company and the bank. The bill alleged all of the facts and asked that the defendants be required to interplead in the cause in order to determine to whom the $618.67 belonged, and that it be permitted to pay the money into court and thereupon be discharged from all liability on account thereof.

No order was made requiring the defendants to interplead. Neither was the city ordered to bring the money into court, and the city was not discharged. The trust company filed an answer in which it alleged all the facts, asserted that the city had no right to withhold from the purchase price of the two carloads of oil the $413.55 to cover the unpaid freight thereon, and prayed judgment against the city for that amount. The bank filed a like answer and asked judgment against the city for $205.12, the amount withheld by the city to cover freight charges on the one carload of oil. The railway filed an answer in which it alleged that it was not asserting an interest in the specific fund of $618.67, but that the city was indebted to it in the sum of $618.67 for freight on the three cars of oil for which it asked judgment against the city. The city filed a reply to the answer of the railway. The only evidence introduced at the trial was an agreed statement of facts signed by counsel for the city and counsel for the railway. This agreed statement of facts was introduced in evidence by both the city and the railway. Neither the trust company nor the bank introduced any evidence. At the conclusion of the hearing, the trial court found that the city was not entitled to a judgment of interpleader, dismissed its petition, and rendered judgment against the city and in favor of the railway for $618.67, the amount claimed in its answer. As to the claim of the trust company and the bank, the court found against the city and rendered judgment in favor of the trust company for $413.55, and in favor of the bank for $205.12. The judgment so rendered by the trial court was affirmed by the Court of Appeals.

Relator's first contention is that the only jurisdiction the trial court had was to dismiss plaintiff's bill of interpleader or sustain it and order the defendants to interplead; that the trial court erred in rendering judgment against the city and in favor of the defendants for the amounts prayed for in their separate an-

swers. Based on this contention, it is claimed that the Court of Appeals contravened controlling decisions of this court in affirming the trial court's action. Matlack v. Kline, 280 Mo. 139, 216 S. W. 323; Roselle v. Farmers' Bank, 119 Mo. 84, 24 S. W. 744, are cited in support of this contention. The cited cases do hold that in an interpleader action the only decree the plaintiff can have is that defendants do interplead; that if such a decree is obtained, the plaintiff is entirely out of the case, leaving the interpleading defendants alone to contest their conflicting claims. In the Roselle case we held:

"An interpleading suit involves two successive litigations—one between the plaintiff (in the bill) and the defendants upon the question whether the defendants shall interplead; the other between the different defendants, i. e., the interpleading itself. The subject of these two litigations are wholly separate and distinct, and, therefore, they require separate allegations and separate proofs."

In the recent case of Brown v. Curtin, 330 Mo. 1156, 1164, 52 S. W. (2d) 387, this court en banc thus states the law on this subject:

"Both appellants and respondents have briefed this case as if the main question in it is whether the second count of appellants' petition is a bill in the nature of a bill of interpleader. Appellants insist it is and say an interpleader proceeding involves two separate, successive and independent litigations: (1) a contest between the plaintiff on the one hand, and all the defendants on the other, as to whether the plaintiff may maintain his bill and implead the defendants against each other; (2) and if that be allowed, a further contest between the contending defendants alone to adjudicate their several antagonistic claims to the fund or property involved. That, we agree, generally is good law in interpleader cases, Matlack v. Kline, 280 Mo. 139, 156, 216 S. W. 323, 327; Roselle v. Farmers' Bank of Norborne, 119 Mo. 84, 92, 24 S. W. 744, 746."

██ It is apparent that the suit in question was not tried in accordance with the rule announced in the cases above cited. Although the case was not tried according to the established rules of procedure governing interpleader cases, in view of the record, relator is not in a position to complain. Each of the defendants filed a separate answer to plaintiff's petition in which they attempted to state a cause of action against the plaintiff, asking therein affirmative relief. All the parties were before the court. Without doubt the court had jurisdiction of the character of actions attempted to be stated in defendants' separate answers. The city made no objection to trying these separate causes of action in the interpleader suit. It filed a reply to the railway's affirmative answer, signed an agreed statement of facts, went to trial without objection and introduced the agreed statement of facts in evidence. As to the alleged cause of

action set up in the answer of the trust company and of the bank, the record shows that such causes were "submitted to the court for its judgment and decision upon the pleadings filed." After the city voluntarily participated in the trial, thereby inviting the court to try and determine the issues tendered by the separate answer of each of the defendants, it is not in a position to complain of such action. The opinion of the Court of Appeals holds that since the city voluntarily participated in the trial and joined in submitting the issues for decision, it will not be heard to complain that the court was without jurisdiction to render the judgment. Our attention has not been called to any decision of the court which holds the contrary on the same or a similar statement of facts. It follows that relator has not shown that the opinion of the Court of Appeals conflicts with prior controlling decisions of this court on this branch of the case.

■ Relator next contends that the Court of Appeals contravened controlling decisions of this court in holding that the city was the owner and consignee and made itself a party to the contract of transportation by accepting each carload of oil and became liable for the freight charges thereon.

The opinion of the Court of Appeals calls attention to the following clause contained in the bills of lading:

"The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery."

Construing the above clause in the bill of lading, the opinion of the Court of Appeals says:

"The contractual relationship of plaintiff and the railway company arises out of shipments in interstate commerce, and the controversy between them being one concerning freight charges for such shipments, their rights and obligations must be determined by the acts of Congress and the decisions of the Federal courts on such matters. (Citing cases.) Under the decisions of the Federal courts, plaintiff, in the case at bar, as the consignee, made itself a party to the shipment contracts by accepting each of the carloads of oil. Under the specific terms of such shipment contract, evidenced by the clause of the bill of lading which we have heretofore set forth, plaintiff thereby became liable to the railway company for the freight charges on such shipment."

Regardless of our views of this holding, relator has not pointed out any controlling decision of this court with which it conflicts.

■ Relator's final contention is that the holding of the Court of Appeals that the trust company and the bank were entitled to judgment on the pleadings conflicts with prior controlling decisions of this court on a similar statement of facts.

The invoices for the three cars of oil were assigned to the trust company and to the bank—two to the trust company, and one to

1194

the bank. The bills of lading were not assigned to them. The assignment of the invoices was merely an assignment of the debt or claim which the oil company held against the city for the purchase price of the oil. The claim of the oil company against the city for the purchase price of the three cars of oil, represented by the assigned invoices, was a mere chose in action. An assignee of a chose in action, except it be negotiable paper before maturity, takes it subject to all the · equities existing between the original parties. [Sumrall v. Sun Mutual Insurance Machinery Co., 40 Mo. 27; United Shoe Machinery Co. v. Ramlose, 210 Mo. 631, 653-4, 109 S. W. 567.] At the time the city purchased the oil, the oil company agreed to pay the freight charges thereon. If the oil company's claim against the city for the purchase price of the three carloads of oil had not been assigned, and the city had paid the oil company the purchase price thereof, less the unpaid freight charges on the three cars, the oil company could not recover from the city the amount of the freight charges withheld, because the contract between the city and the oil company provided that the oil company should pay the freight charges. It follows, therefore, that neither the trust company nor the bank are entitled to recover from the city the amount of the freight charges withheld from the purchase price of the oil, because they, being mere assignees of the nonnegotiable claims of the oil company against the city, acquired no greater rights against the city than the oil company, their assignor, had. They took the claims subject to all of the equities existing between the original parties.

The affirmance of the judgment in favor of the trust company and the bank conflicts with the law as announced in the case last above cited. That part of the opinion should be quashed. It is so ordered. All concur.